In the Matter of the Accounting of NEW YORK TRUST COMPANY et al., as Trustees of the Trust Created by EDA MATTHIESSEN.

Supreme Court, Special Term, New York County, April 18, 1949.

*Dudley Miller* for New York Trust Company, as trustee, petitioner.

*Sidney L. Zuckert* for Conrad H. Matthiessen, Jr., as trustee.

*James N. Vaughan* for First Trust & Savings Bank of Pasadena.

*Thomas J. Curran,* guardian ad litem for infant respondents.

HOFSTADTER, J.   On August 6, 1935, Eda Matthiessen, then residing in the city of New York, as donor, entered into a trust

agreement with Ralph H. Matthiessen, a resident of Irvington, N. Y., and the New York Trust Company, as trustees, by which she created an *inter vivos* trust, the life beneficiary of which is her son, Conrad Henry Matthiessen, Jr., then and still a resident of Pasadena, California. On the following day, August 7, 1935, Ralph H. Matthiessen resigned as trustee and simultaneously the remaining trustee, the New York Trust Company, pursuant to the trust agreement, appointed the life beneficiary, Conrad Henry Matthiessen, Jr., as successor trustee. By an instrument executed in California, Conrad Henry Matthiessen, Jr., promptly accepted appointment as trustee and has been acting as trustee with the trust company ever since.

In this proceeding the trustees, besides praying for the settlement of their account, present for decision the important question whether the situs of the trust may be transferred from this State to California. The question arises because the individual trustee has attempted to substitute a California trust company for the present corporate trustee. The provision of the trust agreement asserted to authorize the proposed substitution is the following:

" (b) Either Trustee may resign without application to the Court. In the event of the death of the said Ralph H. Matthiessen, or the resignation, removal or inability to act of either Trustee, the remaining Trustee with the unanimous consent of all the adult beneficiaries hereunder shall appoint a successor to such Trustee.

" At any time while the said Ralph H. Matthiessen remains a Trustee hereunder he, or while the said Conrad Henry Matthiessen, Jr. shall be a Trustee hereunder, he may request in writing the resignation of the corporate Trustee, and upon receiving such request such corporate Trustee shall forthwith resign, and its successor shall be immediately appointed in the manner hereinabove set forth. Such resignation and such appointment shall not be delayed by an accounting proceeding or for any other reason.

" It is the intent of this instrument that until the termination of the trust there shall always be an individual Trustee and a corporate Trustee which shall be a bank or trust company."

Acting under this provision Conrad Henry Matthiessen, Jr., on October 26, 1948, requested the New York Trust Company in writing to resign as trustee on or before October 30, 1948. On October 29, 1948, by an instrument executed in California, he appointed First Trust & Savings Bank of Pasadena, a Cali-

fornia corporation, as successor trustee and by an instrument executed the same day First Trust & Savings Bank of Pasadena accepted the trust upon the resignation of the New York Trust Company and its own appointment as successor trustee. The New York Trust Company being in doubt desires a determination whether First Trust & Savings Bank of Pasadena is qualified to accept its appointment as trustee.

As already noted, the trust agreement directs the payment of the entire net income of the trust to the donor's son, Conrad Henry Matthiessen, Jr., for life. On his death, the trust is to be distributed outright among his lineal descendants per stirpes, except in the case of a child in being at the date of the trust instrument who is under the age of twenty-five at the time of the death of the life beneficiary. The share of any such child is to be held in trust until the child reaches twenty-five, when it is to be paid over. If such child dies before reaching the age of twenty-five, the share is to be paid to his or her issue, and in default of issue to the next of kin of such child " in the same manner, shares and proportions as if such child had died the owner of such property, a resident of the State of New York, and intestate." Similarly, it is provided that if the life beneficiary himself should die without lineal descendants surviving him, the principal of the trust is to be paid over " to the next of kin, including a surviving wife, of the said Conrad Henry Matthiessen, Jr. in the same manner, shares and proportions as if he had died the owner of said property, a resident of the State of New York, and intestate." The agreement further fixes the compensation of the trustees as that specified for testamentary trustees in the Surrogate's Court Act of the State of New York.

Although the trust agreement does not contain a clause sometimes found in instruments of this type that it is to be governed by the laws of this State, the direction for the application of the laws of intestacy of New York in the contingencies noted and for the payment of the compensation prescribed by our Surrogate's Court Act, coupled with the fact that the donor was at the time of its execution a New York resident and that the agreement named a New York trust company as one of the trustees, may fairly be accepted as a sufficient expression of the donor's purpose to subject the trust to the laws of this State. The present corporate trustee and the guardian ad litem so contend and the Pasadena bank concedes as much. The view that a trust instrument executed under such circumstances and bearing such intrinsic evidence of the settlor's intention is to be ruled by New York law is amply sustained by authority (*Shannon* v.

*Irving Trust Co.,* 275 N. Y. 95; *Hutchison* v. *Ross,* 262 N. Y. 381; *Matter of O'Connor,* 82 N. Y. S. 2d 310).

The principle announced in these authorities, however, does not solve the immediate problem. It deals with the law under which the validity, interpretation or effect of a trust instrument shall be resolved. It does not determine the place for administration of the trust or irrevocably fix its situs in this State.

May the situs of this trust be transferred to California under the trust agreement and consonantly with our public policy? This is the narrow question posed in this proceeding. As in every case calling for the interpretation of a writing we first study its text to ascertain, if possible, the intention of the parties. At the outset it must be recognized that the present agreement does not explicitly confine the administration of the trust to New York. True, the first corporate trustee was a New York trust company. But there certainly is no express provision that its successor is also to be a New York bank or trust company. Giving full effect to what in form, at least, in the clause dealing with successor trustees, is a statement of the grantor's intent rather than a direction, the fact remains that all it says is that the corporate trustee shall always be a bank or trust company.

In the setting of this case I find the absence from the agreement of an express requirement that the successor corporate trustee be a domestic bank or trust company significant. When it was executed the life beneficiary was domiciled in California. He was already the father of four children, three of whom are today adults and one of whom is married and has two children.

It is not shown why the day after the trust agreement was entered into the life beneficiary was substituted for the original individual trustee, Ralph H. Matthiessen. Nevertheless, the express provision in the clause under discussion that "while the said Conrad Henry Matthiessen, Jr. shall be a Trustee hereunder, he may request in writing the resignation of the corporate Trustee" makes it perfectly clear that the grantor contemplated the substitution when she executed the trust agreement. Thus, the grantor, knowing that her son and his family were residents of California, gave him authority to effect the resignation of the corporate trustee and, with the consent of the adult beneficiaries, to appoint a successor corporate trustee "which shall be a bank or trust company." The grantor must have realized that her son might find it more convenient to have the trust administered in a place readily accessible to him and that he might request the resignation of the corporate trustee for the very purpose of bringing about this result. In my opinion, when

the grantor, faced with this situation and its possibilities, failed to limit her son's choice of a successor corporate trustee to a New York bank or trust company, she made it plain that she did not intend so to restrict his choice. The probability, and at least the possibility, that her son might desire to remove the trust administration to California was too strong to permit the inference that it was overlooked in this carefully drawn trust instrument. Assuming, as I think we must, that the grantor had this likelihood in mind, then I see no escape from the conclusion that the absence from this clause of a requirement that the successor corporate trustee be a New York bank or trust company was purposeful. I must hold, therefore, that the trust agreement does not either expressly or by necessary implication confine the administration of the trust to this State or forbid the appointment as successor trustee of a trust company incorporated in another State, even though not qualified to act as trustee in this State.

The agreement is, in my view, neither incomplete nor ambiguous; therefore parol evidence to explain it is inadmissible. If, moreover, the case were one in which parol evidence might properly be received, the donor's statement of her intention and understanding in executing the agreement would still have to be rejected. In reaching my conclusion on the interpretation of the agreement I have consequently disregarded the donor's affidavit.

Though the trust agreement permits the transfer of the trust situs to California, the question remains whether the transfer offends our law or public policy. There is no incongruity in applying to an *inter vivos* trust the law of a jurisdiction other than that in which the trust is being administered. An apt illustration is found in *Shannon* v. *Irving Trust Co.* (275 N. Y. 95, *supra*) where the Court of Appeals gave effect to the direction of the settlor, who was domiciled in New Jersey, that the trust should be governed by the law of New Jersey. Accordingly a trust which would have been invalid under our law was sustained because valid under the law of New Jersey, notwithstanding the fact that a New York trust company was administering the trust in this State. The holding certainly shows that our policy is not hostile to the selection by a nonresident donor of New York as the situs of a trust. Indeed, the assurance that our courts will, if he wishes, apply the law of his domicile to the trust may well be an incentive to establish the situs here. The rule adopted in *Shannon* v. *Irving Trust Co.* (*supra*) is the converse and perhaps the natural corollary of that which permits a nonresident

testator or donor to elect that the validity and effect of a will or trust instrument be determined by New York law (Decedent Estate Law, § 47; Personal Property Law, § 12-a). Under a 1948 amendment to section 171 of the Surrogate's Court Act (L. 1948, ch. 616), moreover, the situs of a testamentary trust of personal property created by the will of a nonresident is deemed to be in this State if the assets are in this State at the testator's death and are administered here in accordance with the will or " except where the will or the laws of the testator's domicile expressly provide otherwise, if such assets are brought into this state for administration."

It cannot be doubted, therefore, that this State encourages the selection by residents of other States of New York as the situs of trusts. It is inconceivable that a State committed to this policy would deny its own residents the corresponding right to establish trusts in other States. In my opinion, under the law of this State, a New York resident may choose another State as the situs of a trust as freely as a nonresident may create a trust in New York.

It is a logical development of this policy that, if permitted by the trust instrument, a situs initially chosen may later be changed. The question is not one of jurisdiction or power but of intention. For obvious reasons the reported instances of transfers of trusts from one State to another are not many. A transfer from New York to Pennsylvania was authorized in *Robb* v. *Washington & Jefferson Coll.* (185 N. Y. 485) to effectuate a trust invalid under New York but valid under Pennsylvania law. The court said (p. 496) : " Therefore, if the trust, though invalid by our law, is legal under the laws of Pennsylvania, the fund should be transmitted to that state and the trust upheld." (See, also, *Wilmington Trust Co.* v. *Wilmington Trust Co.*, 26 Del. ch. 397, a case in which the situs was transferred from New York to Delaware pursuant to express power given in the trust instrument.)

I do not regard *Matter of Walbridge* (178 Misc. 32) as deciding anything in conflict with the foregoing views. There no evidence of any intention on the part of the testator, a New York resident, to confer on the donee of a power of appointment the power to direct the administration of a testamentary trust in another State was found. Surrogate FOLEY in his opinion, however, recognized that where such intention does appear it will be given effect (p. 38) and he cited *Matter of McAuliffe* (167 Misc. 783) in which the situs of a trust created by a will of a New York resident probated in this State was held to be in Rhode

Island. It has already been demonstrated that in this case the trust agreement does bear evidence of the donor's intention to authorize the transfer of the situs of the trust through the appointment of a successor corporate trustee which may not be a New York bank or trust company.

It is said, however, that our Banking Law forbids the acceptance by First Trust & Savings Bank of Pasadena of its appointment as successor trustee. Under subdivision 3 of section 131 of the Banking Law of this State a bank or trust company of another State may not act in a fiduciary capacity in this State unless the State of its incorporation accords a like privilege to New York banks and trust companies. It is undisputed that under the statutes of California a New York bank or trust company may not act in California as the trustee of an *inter vivos* trust. It follows that First Trust & Savings Bank of Pasadena may not administer the Matthiesson trust in New York. The Pasadena bank freely admits this and answers that it has no intention to act as trustee in this State. It seeks delivery of the property constituting the trust solely to remove it to California for administration there.

But, it is insisted that the appointment itself would be a violation of the Banking Law. The argument, which I do not find it necessary to explore at length, proceeds from a narrow and literal reading of subdivision 3 of section 131 and section 100 of the Banking Law. It stresses too the aim of the statute to prevent competition with New York trust companies by trust companies of States other than those which accord New York trust companies like privileges. A simple answer is that the statute deals with activity within, not without our State. If, moreover, competition by foreign trust companies not able to qualify in this State is the evil to be suppressed, there is no difference in its effect between acceptance by such a corporation of an original appointment under a trust created by a New York resident and of an appointment by succession. Yet the present corporate trustee maintains that the former is free from objection while the latter offends against the Banking Law, because, so it is argued, in the former case acceptance occurs on delivery in the foreign jurisdiction while in the latter the New York trustee may compel the foreign trustee to accept delivery here. Since I do not believe the statute was ever intended thus to make it possible for a trustee to thwart the will of the creator of the trust, I must reject a construction which leads to such anomalies. In my opinion the banking law was directed at administration of trusts within this State by foreign trust companies and, there-

fore, delivery of the trust assets to the First Trust & Savings Bank of Pasadena for immediate transfer to California is not prohibited by the statute.

*Matter of Rhoades* (184 App. Div. 658) presented a somewhat similar situation. A California corporation, which had been appointed committee in California of an incompetent resident in that State sought appointment as committee in New York where the incompetent had property. After denial of this application on the ground that the California corporation could not qualify and the appointment of an individual as committee here, the committee so appointed applied for permission to remit the assets, consisting of money, to the committee in California. In granting this application the court stated that the prohibition contained in section 223 (the precursor of the present section 131) of the Banking Law is intended to safeguard the administration of trust estates in this State and that the requested transfer was not within the prohibition. Again in *Toronto Gen. Trust Co.* v. *Chicago, Burlington & Quincy R. R. Co.* (123 N. Y. 37) a testamentary trustee appointed in Canada was allowed to sue here to recover property of the trust within the jurisdiction.

It appears that the grantor who, by reason of her reversionary interest, is an adult beneficiary under the trust agreement has assigned her interests. While she has consented to the appointment of First Trust & Savings Bank of Pasadena as successor trustee, her assignee has not done so. So far as the petition discloses the assignment was unconditional, the consent of the assignee should therefore be filed and a reasonable opportunity will be afforded to procure the same.

The holding that the situs of this trust may be transferred to a sister State without offending our policy gives the trust mobility instead of rigidity. In these days, when *inter vivos* trusts are created with ever growing frequency, when State lines are crossed so easily and people maintain contacts in several States, a sympathetic approach to problems of this sort is more likely to lead to the effectuation of the true intent of the creator of the trust. In this case, the removal of the trust from the grantor's former home State to the present home State of those interested meets the wishes of all the adult beneficiaries. This end, when legally permissible, is more desirable than the continued retention of jurisdiction for its own sake.

The settlement of the account must await the further report of the guardian ad litem. Proceed accordingly.