J. Irwin Shapiro, J.
Defendants “ appearing specially herein solely for the purpose of the foregoing motion ” apply “ for an order, pursuant to Section 237-a of the Civil Practice Act, vacating and setting aside the purported service of the summons herein upon the individual and corporate defendants herein, and dismissing the complaint herein, on the grounds, respectively, that the Court does not have jurisdiction over the person of the individual defendant as a Co-Executor of the Estate of Walter E. Irving, deceased, or over the person of the corporate defendant as a Co-Executor of the Estate of Walter E. Irving, deceased, or otherwise, and that the Court lacks jurisdiction, or should decline jurisdiction, over the subject matter of this action.”
Walter E. Irving, a resident of Connecticut, died on May 5, 1958. His last will was admitted to probate in the Probate Court for the District of Darien, Fairfield County, Connecticut. He named three executors and trustees — plaintiff, who had been his attorney, and the defendants. Plaintiff and the individual defendant are residents of Connecticut. The corporate defendant is a banking corporation organized under the laws of Connecticut. Each of the parties has duly qualified as executor in Connecticut.
The present action is for a declaratory judgment as to the rights and obligations of the parties who are named in their individual capacities in the title of the action. The complaint, inter alia, alleges that the decedent, Walter E. Irving, at the time of his death held a majority stock interest in Irving Subway G-rating Co., Inc., a New York corporation, (hereinafter referred to as the “Corporation”); that he also personally owned real estate in New York City which was leased to that Corporation; that said stock interest and real estate constitute a major part of the estate; that no ancillary proceedings have been instituted in the New York Surrogate’s Court; that although the corporate defendant has not qualified in New York to act as executor or trustee of the decedent’s estate or to act as a foreign banking corporation, it is acting as such executor *810 in New York, contrary to the provisions of section 131 of the Banking Law, in that, among other things, it has participated in meetings in New York of the executors to determine the selection of directors, including its own officers, to manage the Corporation’s business; that it has attended stockholders’ and directors’ meetings in New York and has advised and consulted with the Corporation’s personnel; that it has paid taxes and other expenses incident to the administration of the real estate in New York and has authorized tax certiorari proceedings in connection therewith.
It is further alleged that against plaintiff’s wishes and protest the defendants have voted the majority stock of the Corporation held by the parties as coexecutors and have taken and approved action detrimental to the Corporation and the beneficiaries of the decedent’s estate; and that by reason of such action by the corporate defendant £ £ plaintiff is unable to perform his lawful duties as an executor and fiduciary of the estate and is exposed to personal liability if the conduct of the affairs of the Corporation and the management of the real estate result in losses to the estate by reason of the unlawful conduct of the Bank [the corporate defendant] and the granting by the Bank to itself of powers which it cannot lawfully exercise in the State of New York.”
The prayer for relief requests a declaratory judgment that the corporate defendant is acting as executor in New York contrary to the provisions of section 131 of the Banking Law, that all acts of the Corporation’s stockholders taken at the meeting on December 19, 1958, be declared null and void, and that the corporate defendant be enjoined from acting as an executor of the decedent’s estate in New York.
The summons and complaint were personally served upon the individual defendant and upon a vice-president of the corporate defendant while they were attending a . meeting of the Corporation’s board of directors in New York City.
In support of its special appearance, the corporate defendant states that ££ Its only connection with the State of New York is incidental to the performance of duties as trustee, guardian, executor or administrator of trusts or estates with property or assets located in the State of New York.” It further sets forth that plaintiff recently commenced a will construction proceeding in Connecticut charging the defendants with violating a specific provision of the decedent’s will, by substituting their judgment for his in connection with the management of the Corporation’s affairs and also instituted in this court a proceeding to stay a meeting of the Corporation’s stockholders scheduled for Decern *811 ber 19, 1958, which proceeding was discontinued following a denial of temporary injunctive relief on the ground, inter alia, that other remedies were available. (Matter of Ray v. Irving Subway Grating Co., 16 Misc 2d 1088.) The corporate defendant also alleges that the question of its qualification under section 131 of the Banking Law was not raised until after plaintiff’s replacement as New York counsel for the decedent’s estate.
While several novel and complex questions, not free from difficulty, are suggested by the motion,* in my opinion the decision entails resolution of only a few issues. They are: (1) Does this court have jurisdiction over the subject, matter of this action? If it does not, then we need go no further and the special appearances must be sustained on that ground alone; (2) If it is determined that this court does have jurisdiction over the subject matter of this action, then has it acquired jurisdiction over the persons of the defendants by the service of process upon them in New York? (3) If this court did not acquire jurisdiction over the persons of the defendants by service of process upon them in New York, have they, despite their attempted special appearance herein, appeared generally by arguing the merits of their contentions; and finally (4) If this court has jurisdiction over both the subject matter of this action and the persons of both defendants, should it ‘ ‘ decline ’ ’ jurisdiction over the subject matter of this action?
In support of their contention that this court has no jurisdiction over the subject matter of this action, defendants urge that although they are named in the title of the action in their individual capacities, the allegations of the complaint make it clear that plaintiff intended to and did in fact sue them in their representative capacities as coexeeutors of a Connecticut estate and that, therefore, this court is without jurisdiction of the subject matter in the premises.
This raises the question as to the nature of this action against defendants. Traditionally, whether the claim or liability is that of the representative in his representative or individual capacity generally depends upon when the transaction giving rise to it took place: if before the death of the decedent, the representa *812 five’s capacity is as a representative; if after, as an individual, although he is accountable for it. (Johnson v. Wallis, 112 N. Y. 230; Murphy v. Hall, 38 Hun 528; Bright v. Currie, 5 Sandf. 433; Newton v. Jay, 107 App. Div. 457, 469; see 3 Beale, Conflict of Laws, §§ 508.1, 515.1; Goodrich, Conflict of Laws [3d ed.], §§ 189-190; Stumberg, Conflict of Laws [2d ed], p. 446; Restatement, Conflict of Laws, §§ 483, 508, 515.)
In the light of these authorities, the instant action obviously does not involve a right running to the decedent, or a liability incurred by him, so as to render defendants suable in their representative capacity. It may well be that the foregoing test of determining in what capacity of the parties the present action is maintainable is not exhaustive and cannot be automatically applied. Nevertheless, it seems to me — notwithstanding the appearance of an element of illogic in that the controversy occurs in the course of their business as executors — that the considerations underlying such test serve as a useful means of approach and are applicable to this action and that, accordingly, the defendants are suable in their individual capacities. This court, therefore, has jurisdiction of the subject matter of the action.*
If defendants are properly suable in their individual capacities it is obvious that the individual defendant is in no position to object to jurisdiction over his person since he was personally served in New York. As to the corporate defendant (apart from the issue as to whether both defendants have effectively waived their special appearance — a matter discussed below), effective service of process depends upon whether it is “ doing business ” in this State (see Tauza v. Susquehanna Coal Co., 220 N. Y. 259; Dollar Co. v. Canadian Car & Foundry Co., 220 N. Y. 270; Holzer v. Dodge Bros., 233 N. Y. 216) or whether, according to several recent decisions of the United States Supreme Court *813 (International Shoe Co. v. Washington, 326 U. S. 310; Travelers Health Assn. v. Virginia, 339 U. S. 643; McGee v. International Life Ins. Co., 355 U. S. 220; Hanson v. Denckla, 357 U. S. 235), there are sufficient “ affiliating circumstances ” (Hanson, supra, p. 246, quoting Sunderland, The Problem of Jurisdiction, Selected Essays on Constitutional Law, 1270, 1272) or sufficient ££ minimum contacts” with the State so that the maintenance of the suit does not offend ‘£ traditional notions of fair play and substantial justice ” (International Shoe Co. v. Washington, supra, pp. 316, 319).*
In view of the conclusion which I have reached concerning both defendants ’ waiver of their special appearance, it becomes unnecessary to decide whether the corporate defendant’s activities in this State, as set forth in the complaint and affidavits, would be sufficient to impose in personam jurisdiction over it. However, were resolution thereof essential, I would be inclined to find sufficient£ £ minimum contacts ’ ’ with this State to warrant taking personal jurisdiction over the corporate defendant.
In their notice of motion defendants seek relief not only on the ground that ££ The Court lacks jurisdiction ”• — -but also on the ground that it — ££ should decline jurisdiction, over the subject matter of this action. ’ ’ (Italics added.)
Prior to the enactment in 1951 of section 237-a of the Civil Practice Act (L. 1951, ch. 729), the procedure relating to a special appearance in New York was somewhat unclear (see Sixteenth Annual Report of N. Y. Judicial Council, 1950, pp. 66-70, 189 et seq.; Seventeenth Annual Report, 1951, pp. 58-64). Then, a special appearance was permitted for the sole purpose of objecting, by motion, to the court’s exercise of jurisdiction over defendant’s person. Only after the motion was denied was a defendant permitted to defend the action on the merits without waiving the jurisdictional objection previously raised by him (Sixteenth Annual Report, pp. 192, 199). Indeed, coupling an objection that the court had not jurisdiction of the subject of the action with one to the court’s jurisdiction over defendant’s person constituted a general appearance and a waiver of the *814 latter objection. (Jackson v. National Grange Mut. Liab. Co., 299 N. Y. 333. )
Subdivision 2 of section 237-a changed the decisional law so as to permit simultaneous joining of objections to jurisdiction, whether of the person or subject matter. If this is only what defendants have done, no question of waiver could arise. But in my opinion defendants went further when they asked the court, as an alternative to the other phases of the motion, to “ decline” jurisdiction over the subject matter of the action. They cannot argue that they are not properly before the court and in the same breath maintain that if they are, the court should refuse jurisdiction upon such grounds as convenience, policy, discretion, etc., which I envisage to be embraced by the word “ decline.” Such an attitude, evidenced by a request for relief of a nature which appears to require the recognition of the court’s jurisdiction, is inconsistent with the want of jurisdiction over the person (see, generally, Ann., Ill A. L. R. 925). Moreover, other matter contained in the moving affidavits and the briefs relate to the merits and must be deemed inconsistent with any challenge to the jurisdiction of the person.
In short, the defendants cannot deny jurisdiction and at the same time urge merits. (Henderson v. Henderson, 247 N. Y. 428, 434; Revona Realty Corp. v. Wasserman, 4 A D 2d 444, 449.) Thus, the defendants’ motion asking the court to decline to pronounce a declaratory judgment necessarily assumes for its basis the existence of an action in which they are personally subject to the jurisdiction of the court.
In Farmer v. National Life Assn. (138 N. Y. 265), the defendant, a foreign insurance company, asserted the absence of personal jurisdiction over it, in view of the means that were taken to make service of process upon it. After such service was made, it filed the necessary bond and petition and took the procedural steps to remove the action to the Federal court. Such removal was effected. The Federal court thereafter remanded the case to New York, where the absence of jurisdiction was asserted by the defendant. The Court of Appeals, at page 270 of its opinion, held that the defendant, by taking the steps necessary to remove the ease to the Federal court, had so proceeded in the action in New York as to waive the objection of the absence of personal jurisdiction by the New York court over it. Said our Court of Appeals: ‘ ‘ Where the defendant becomes an actor in the suit and institutes a proceeding which has for its basis the existence of an action to which he must be a party” he “thereby submits himself to the jurisdiction of the court, and no disclaimer which he may make on the record, *815 that he does not intend to do so, will he effectual to defeat the consequences of his act. ’ ’
The defendants here have done precisely what the defendant did in the Farmer case (supra). Despite their disclaimer in the record that they were appearing generally and their affirmative statement that they were “ appearing specially herein solely for the purpose of the foregoing motion ” they cannot thereby “ defeat the consequences ” of their action in asking the court to “ decline ” jurisdiction. The very nature of the request to the court to “ decline ” jurisdiction necessarily assumes that the court does have jurisdiction over the defendants and the subject matter of the cause of action. If it did not have such jurisdiction, the court would not be in a position to “ decline ” to exercise it. Both defendants therefore must be deemed to have appeared generally herein.
■Having concluded that both defendants are properly before the court, I turn to the question whether this court, under the circumstances of this particular case, should pronounce a. declaratory judgment as to the rights and obligations of the parties, all residents of Connecticut, whose source of authority is a will of a Connecticut domiciliary.
The gravamen of the complaint is that the activities of the corporate defendant constitute a violation of section 131 of the Banking Law. The intendment of that statute is to prevent competition with New York trust companies by trust companies of States other than those according reciprocal privileges to New York trust companies (Matter of Smith, 2 Misc 2d 755; Matter of Matthiessen, 195 Misc. 598). (It is interesting to observe that the complaint alleges both that the corporate defendant has qualified as a fiduciary in two other estates administered in New York and that reciprocity does not exist under Connecticut law.)
Section 131 does not make clear who may enforce its provisions. Subdivision 5 thereof provides that everyone violating the section ‘ ‘ shall forfeit one thousand dollars to the people of the state.” That the Attorney-General may institute a proceeding under the section appears manifest. Local creditors and local beneficiaries may perhaps be similarly situated. But I fail to see how a cofidueiary circumstanced like plaintiff is in a position to press an objection predicated upon an alleged violation of section 131.
The plaintiff further contends that the res which is the subject matter of the controversy between the parties to this action is located in the State of New York where the directors’ and stockholders’ meetings are held, where the certificates of stock *816 in the New York corporation are located, where the defendants purport to manage real estate owned by the estate on which the corporation’s plant is located, and where all of the acts complained of occurred. Consequently, on these grounds, too, they urge that this court should assume jurisdiction of the action.
In determining where shares of stock are assets for the purpose of administration, the courts have not been harmonious. Some decisions have treated the shares as assets at the domicile of the corporation, others at the domicile of the owner, and still others at the place where the shares are physically kept. Reference to the presence of a local transfer office has also been made (see, e.g., Lockwood v. United States Steel Corp., 209 N. Y. 375; Middlebrook v. Merchants’ Bank, 3 Keyes 135; Howard v. Marlin-Rockwell Corp., 156 Misc. 358; Riley v. New York Trust Co., 315 U. S. 343; Anno., 72 A. L. R. 179). While recognizing the conflict, the writers appear to favor the business practice of treating the certificate as property and to deem the presence of the certificate as a basis for administration (see 3 Beale, Conflict of Laws, §§ 477.1-477.4; Goodrich, Conflict of Laws [3d ed.], pp. 545-548; Stumberg, Conflict of Laws [2d ed.], pp. 438-439; Restatement, Conflict of Laws, § 477; 45 Yale L. J. 379; but cf. Pomerance, The “ Situs ” of Stock, 17 Cornell L. Q. 43, 61-62).
It will be observed that in the usual case, considering the situs of corporate stock for purposes of administration, the issue is one of title to, transfer or ultimate disposition of, the stock. That is not the situation here. A difference in issues may require a difference in treatment (see Hopkins, Conflict of Laws in Administration of Decedents’ Intangibles, 28 Iowa L. Rev. 422, 427-428).
As regards the New York realty owned by the decedent, the general rule appears to be unquestioned that ‘£ Land within a state can be administered only in that state, by an administrator appointed by a competent court, of that state ” (Restatement, Conflict of Laws, § 487; see comment thereon in the New York Annotations, p. 322). But the question as to what constitutes ££ administration ” in any particular circumstances remains to be answered. Thus, ££ A power to sell land conferred by a will upon an executor can be exercised by that executor, even though he has not been appointed in the state where the land is ’ ’ (Restatement, Conflict of Laws, § 491 and Comment d; see the New York Annotations, p. 322, citing Newton v. Bronson, 13 N. Y. 587; Bromley v. Miller, 2 Thomp. & C. 575; Young v. Brush, 28 N. Y. 667; Pollock v. Hooley, 67 Hun 370). I merely point out some aspects of the problems of situs, but do not deem it essential to answer them categorically, for in any event the *817 mere presence of assets within this State does not of itself warrant the assumption of jurisdiction. (Hill v. International Prods. Co., 198 App. Div. 591, 594.) This is not an action for the purpose of determining the ownership of property within this State which has been held an exception to the general rule (Holmes v. Camp, 219 N. Y. 359, 372); nor is this a case where failure of justice would follow if this court failed to assume jurisdiction. (Leighton v. Roper, 300 N. Y. 434, 438, supra.) All that there is here is a dispute among foreign coexeeutors as to the qualification or lack thereof under section 131 of the Banking Law of the State of New York, of one of them, a bank licensed to do business only in Connecticut, to act in New York with respect to assets there located. This could be determined as readily in the State of Connecticut, whose courts are the source of the authority of all of the parties to this action.
As was pointed out in Collins v. Steuart (2 App. Div. 271, 283), cited with approval in Driscoll v. Loeb (270 App. Div. 150, 151): “ The policy of the law is, that estates of decedents shall be settled as far as possible in one forum, not in a number. It is only where facts appear showing that the original forum will be unable to perform the duty incumbent upon it, that the courts of this State will intervene. They do so to assist, not to embarrass, the original forum ”.
Under rule 212 of the Buies of Civil Practice the granting or withholding of a declaratory judgment is a matter of judicial discretion with the court. It seems to me that the facts in this case do not justify the court in exercising its discretion to take jurisdiction. All the parties are residents of Connecticut. They function through the Connecticut court of their appointment and are amenable and accountable to that court until their discharge on final accounting. There is no showing that the decedent’s estate is being prejudiced or that plaintiff will be liable for defendants’ acts which he opposes. None of the beneficiaries has joined with plaintiff in opposition to defendants. The Connecticut court can better supervise and control the administration of the estate and the conduct of the fiduciaries. While there is not a want of power in the court to entertain the action (cf. Ann. 115 A. L. B. 802), reasons of policy, convenience and comity in my opinion dictate the conclusion that this court should decline to entertain this action for a declaratory judgment.
Settle order in accordance with the foregoing.

 My research confirms the observation made in the Restatement, Conflict of Laws (Introductory Note, ch. 11, p. 559) : “The Conflict of Laws problems arising in the administration of estates present the difficulties involved in other important phases of Conflict of Laws plus some others peculiar to this part thereof. Problems here have been less worked upon by legal writers than many, perhaps most, other parts of the subject. There are many gaps in the adjudicated cases, in some instances even where a specific problem must have arisen and been dealt with in the handling of estates.”

 Even if it were held that the defendants were in fact being sued in their representative ’ capacities, it would not necessarily follow that they would not be suable in this State, i.e., that this court would not have jurisdiction of the subject matter of the action, because while “ It is well-settled, by the common law of New York, that a foreign representative generally has no standing in our courts, as such, and may neither sue nor be sued [citing eases]. The rule has its exceptions, under which our courts have taken jurisdiction over foreign representatives [citing eases](Leighton v. Roper, 300 N. Y. 434, 438; see, generally, on this subject, 3 Beale, Conflict of Laws, § 512.1 et seq.; Goodrich, Conflict of Laws [3d ed.], § 190; Stumberg, Conflict of Laws [2d ed.], p. 445.) It should be noted that since the decision in the Leighton case {supra), decided in 1950, section 160 of the Decedent Estate Law, as re-enacted in 1951 (L. 1951, eh. 522; see Seventeenth Annual Report of N. Y. Judicial Council, 1951, pp. 57-58, 157-168), now permits foreign representatives to sue in like manner and under like restrictions as nonresidents upon compliance with certain specified conditions.

 These recent decisions “have been eases where the subject of the litigation or the nature of the activity or transaction out of which it arose afforded a specific basis for finding a special interest of the state in providing a forum for the benefit of its own residents or for the assertion of its own interests.” (Statement of New York State Law Revision Comm., N. Y. Legis. Doc., 1959, No. 65 [C] [mimeographed], pp. 4-5, accompanying [1959] Senate Int. No. 1065, Pr. No. 1082, Assem. Int. No. 1392, Pr. No. 1393, recommending the adoption of a new section 229-a of the Civil Practice Act, in relation to personal service of process on foreign corporations whether or not doing business in this State.)