MARTHA B. WALTON vs. DAVID P. HARRIS & another,[1]
trustees.

No. 93-P-1702.

Bristol. November 21, 1994. - March 16, 1995.

Present: WARNER, C.J., JACOBS, & IRELAND, JJ.

*Trust*, Breach of trust, Removal of trustee, Jurisdiction, Probate Court.
*Jurisdiction*, Forum non conveniens. *Conflict of Laws.*

A Probate Court had jurisdiction over the administration of trust assets
that had been, by agreement, separated from a trust and transferred to
Florida and over two out-of-State trustees, where the settlor, a Massa-
chusetts resident, had manifested her intent that the trust be adminis-
tered in Massachusetts and where in the twenty-five years before the
transfer in 1982 the Probate Court had continually so supervised the
administration of the trust. [254-257]
An out-of-State trustee of trust assets, the administration of which was
within the jurisdiction of the Probate Court, did not establish that Mas-
sachusetts would be an inconvenient forum under G. L. c. 223A, § 5, to
warrant dismissal of a trust beneficiary's complaint in the Probate
Court for breach of fiduciary duty, an accounting, and removal of the
trustees. [257-258]

CIVIL ACTION commenced in the Bristol Division of the
Probate and Family Court Department on June 26, 1992.

The case was heard by *Edward F. Casey*, J.

*James S. Dittmar* for the plaintiff.

*Gordon T. Walker* for David P. Harris.

*Barbara L. Moore* for Arthur J. Ferguson.

WARNER, C.J. Edith B. Young (the settlor) created an ir-
revocable inter vivos trust in 1957. She executed the trust
instrument in Fairhaven, her place of domicile, and ap-
pointed two trustees: her son, Richard B. Young of Mat-
tapoisett, was to be the interested trustee, and Samuel Den-

----

[1]Arthur J. Ferguson.

nis of Wellesley Hills was to be the independent trustee. The trust's second article instructed the trustees to divide the trust fund in two: half for the benefit of the settlor's son and his issue, and half for the benefit of the settlor's daughter, Edith E. Harris of Wellesley Hills, and her issue. The trustees were given the power, however, to invest the principal of the two trusts in a common trust fund created under G. L. c. 203A.

Initially, then, there was a Massachusetts trust. The question is whether actions that occurred over the years have caused that to no longer be the case.

In 1967, the bank and the individual named in the trust to be successor trustees filed declinations,[2] and a petition was filed in the Bristol County Probate Court pursuant to G. L. c. 204, § 14, seeking approval of a compromise agreement, later approved by the court's decree, concerning the succession of trustees. The agreement, adopted in 1967, provided, among other things, that the settlor's son and daughter would be the initial interested trustees and that Samuel Dennis would be the initial independent trustee. Successor independent trustees were henceforth to be chosen by a committee of five senior partners of the Boston law firm Hale and Dorr. The settlor was a signatory to the agreement.

On December 4, 1980, the trustees directed the Shawmut Bank of Boston, which had been custodian of the trust funds since 1957, to transfer the assets of the trust for the benefit of the settlor's daughter (the daughter's trust) to Sarasota, Florida, where the daughter then resided. An investment management account was established at a Sarasota trust company. In 1982, the Bristol County Probate Court approved a second compromise agreement pursuant to G. L. c. 204, § 14, providing that the daughter's trust be separated from the trust for the benefit of the settlor's son and his issue. The agreement further provided that if the settlor's son

_____

[2]The trust document named the First Safe Deposit Bank of New Bedford to succeed Samuel Dennis as independent trustee. Karl Goodwin of New Bedford was named as successor trustee in the event the settlor's children or grandchildren refused in the future to act as trustees.

were to cease to be trustee of the daughter's trust, David P. Harris (the son of the settlor's daughter) was to become trustee.[3]

David P. Harris, a resident of Illinois, succeeded the settlor's son as trustee in 1982. Dennis resigned as independent trustee in 1984, and the defendant Arthur Ferguson, a Florida resident (and an officer of the Florida trust company managing the assets of the daughter's trust), was designated to serve as the successor independent trustee.

On June 26, 1992, the plaintiff, Martha B. Walton, as beneficiary of the daughter's trust, filed a complaint in the Bristol County Probate Court for breach of fiduciary duty and an accounting and seeking the removal of the trustees. The defendant trustees moved for dismissal, asserting that the court lacks subject matter jurisdiction over the trust res, because it is located in Florida, and lacks personal jurisdiction over the defendants, as residents of Illinois and Florida, respectively. The defendant Ferguson also invoked the doctrine of forum non conveniens. The court allowed the defendants' motions without specifying the grounds for its decision. The plaintiff appeals from the ensuing judgment of dismissal.

1. *Jurisdiction.* In order to exercise power over a trust, a court must have jurisdiction over either the trustee or the trust property. 5A Scott on Trusts § 565, at 154 (4th ed. 1989). The court of a State in which the settlor intends the trust to be administered may exercise jurisdiction over the trust res. 5A Scott on Trusts § 571, at 180. See *Greenough* v. *Osgood*, 235 Mass. 235, 237-238 (1920). If the trust document does not explicitly designate a place of administration, the settlor's intent "may appear from the language that he uses as interpreted in the light of all the circumstances." 5A Scott on Trusts § 574, at 200. *Norton* v. *Bridges*, 712 F.2d 1156, 1161 (7th Cir. 1983). See *Greenough* v. *Osgood*,

---

[3]In 1977, the trustees filed a complaint for instructions pursuant to G. L. c. 215, § 6, given by a judgment of May 18, 1978, in Bristol County Probate Court, seeking a determination of the powers of the independent trustee and a declaration that the term "minor" in the trust instrument referred to persons younger than eighteen years old rather than twenty-one years old as minority was defined when the trust was created.

*supra*; Restatement (Second) of Conflict of Laws § 267 comment c (1971).

In this case, the settlor did not explicitly designate a place of administration, but she nevertheless manifested her intent that the trust be administered in Massachusetts. A Massachusetts resident, she executed the trust in the Commonwealth and appointed Massachusetts residents as original and successor trustees. Provisions in the trust indicate the settlor's desire to retain the family's interest in the Acushnet Process Company, the (New Bedford) Massachusetts business whose stock constituted the bulk of the trust assets.[4] The trust instrument refers to Massachusetts law regarding the creation of a common trust fund under G. L. c. 203A, indicating the settlor's assumption that the trust would be governed by Massachusetts law.

The settlor's initial appointment of a Massachusetts bank as successor independent trustee shows that she intended the trust's administration to remain in Massachusetts for the future. See note 2, *supra*. An institutional trustee "is relatively likely to remain domiciled in the same forum over the entire period of the trust's existence. By choosing such an institution as trustee, the settlor has impliedly chosen a state of administration." *Norton* v. *Bridges*, 712 F.2d at 1161. The compromise agreement following the bank's declination, providing for the appointment of successor independent trustees by members of a Boston law firm, again manifested Young's expectation that the trust would be administered in Massachusetts. See 5A Scott on Trusts § 612, at 352 (discussing factors courts consider to determine the settlor's intent, including the settlor's domicil at the time the trust was created, the situs of the trust property at that time, the place of the execution of the trust instrument, the purposes of the

---

[4] Authorization was given to hold stock of Acushnet Process Co. and Acushnet Process Sales Co. in any amount and for any period of time as well as to buy more such stock; exclusive voting power of the stock was placed in the settlor's son; and special authority was given to sell such stock in succession to relatives, officers, personnel and other parties in interest of the same corporation. In 1976, both Acushnet companies were merged into American Brands, Inc., a larger, publicly-traded corporation.

trust, as well as any other factors that may help in the determination).

Moreover, from 1957, the year of the trust's execution, through 1982, after the res of the daughter's trust had been moved to Florida, the Massachusetts Probate Court continually supervised its administration, approving compromise agreements in 1967 and 1982, and instructing in 1978 concerning, among other things, the powers of the independent trustee. Finally, in keeping with the settlor's wishes, Massachusetts continues to retain significant contacts with the trust through the Boston law firm's responsibility for appointing successor independent trustees.

The defendants rely on two cases to contend that the daughter's trust situs is Florida. Neither supports their position. In *Sadler* v. *Industrial Trust Co.*, 327 Mass. 10, 12-13 (1951), the court held that a Massachusetts Probate Court lacked jurisdiction over a nonresident trustee despite the beneficiaries' residence in Massachusetts and the settlor's former residence in the Commonwealth. The situs of the trust was Rhode Island. There was no assertion in *Sadler* that the settlor had intended the trust to be administered in Massachusetts. It had been executed in Rhode Island, the trustee was a Rhode Island trust company which had always held the property in that State, and the trusts were wholly administered in Rhode Island. Each factor the *Sadler* court considered significant in determining the trust situs — the place of execution, appointment of trustees, and place of administration — indicates, in this case, the settlor's intent that Massachusetts be the trust situs.

Nor are the defendants aided by their reliance on *In re Matthiessen*, 195 Misc. 598 (N.Y. 1949), in which the court determined that the administration of a trust could shift from New York to California. There, a New York settlor had created an inter vivos trust for a life beneficiary, her adult son, domiciled in California. The court found that the settlor had manifested her intent that the situs of the trust

could change for her son's convenience. *Id.* at 604.[5] In this case, the settlor manifested no intent that the trust situs be moved from Massachusetts. Moreover, in *Matthiessen* the court noted that the change in situs met the wishes of all the adult beneficiaries. *Id.* at 606. No such agreement exists regarding the trust in this case.

The situs of the daughter's trust remains in the Commonwealth, and the Massachusetts Probate Court therefore has authority to exercise jurisdiction over matters concerning its administration. *Norton* v. *Bridges,* 712 F.2d at 1160-1161, citing Restatement (Second) of Conflict of Laws § 267 comment d (1971) and Bogert, Trusts and Trustees § 292, at 409 (2d ed. 1977) (a court in the State in which the settlor intends the trust to be administered may determine both the interests of the beneficiaries in the property and also questions relating to the liability of the trustee).

2. *Forum non conveniens.* The defendant Ferguson argues that, even if jurisdiction is proper, the courts in the Commonwealth should nevertheless refrain from exercising jurisdiction over the plaintiff's action for breach of trust commenced in Massachusetts because Massachusetts is an inconvenient forum pursuant to G. L. c. 223A, § 5.[6] We disagree. Where, as here, jurisdiction is proper, the action should not be dismissed absent compelling circumstances: "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Kear-*

---

[5]The settlor appointed a New York resident as individual trustee and a New York bank as institutional trustee. The day after the trust was executed, the individual trustee resigned, and, pursuant to the trust agreement, the New York bank appointed the son as successor trustee. The trust instrument specified that, as trustee, the son could demand the institutional trustee's resignation and appoint a successor institutional trustee. The son demanded the resignation of the New York institutional trustee and designated a California bank as successor trustee. The New York bank sought the trial court's clarification of situs before releasing the trust property. *In re Matthiessen,* 598 Misc. at 601-602. The specific circumstances of the case led the court to conclude that the settlor had intended to permit her son to change the place of administration.

[6] The defendant Harris did not raise the forum non conveniens issue in his original motion to dismiss.

*sarge Metallurgical Corp.* v. *Peerless Ins. Co.*, 383 Mass. 162, 169 (1981), quoting from *New Amsterdam Cas. Co.* v. *Estes*, 353 Mass. 90, 95 (1967). None of the factors as set out in *Gulf Oil Corp.* v. *Gilbert*, 330 U.S. 501, 508-509 (1947), quoted with approval in *New Amsterdam Cas. Co.* v. *Estes*, 353 Mass. at 95-96, tips the scale in favor of dismissal and against allowing the plaintiff to proceed with her action in Massachusetts. We conclude that "the defendant has not sustained [his] burden of showing circumstances so strongly in [his] favor that the plaintiff[ ] should be denied [her] right to bring suit in Massachusetts." *Minnis* v. *Peebles*, 24 Mass. App. Ct. 467, 473 (1987). It was, therefore, an abuse of discretion to dismiss the action on the ground of forum non conveniens, see *W.R. Grace & Co.* v. *Hartford Acc. & Indem. Co.*, 407 Mass. 572, 577 (1990), and the plaintiff's controversy should be resolved in Massachusetts.

The judgment is reversed, and the case is remanded to the Probate Court for further proceedings.

*So ordered.*