Hinkle, J.
Plaintiff Emma Louise Rhodes seeks monetary damages for personal injuries she sustained in a diving accident which occurred in Saudi Arabia on August 23, 1994, allegedly as a result of defendants’ negligence and breach of implied warranty. Defendants, ITT Sheraton Corporation (ITT Sheraton), Sheraton International, Inc. (Sheraton International), Sheraton Overseas Management Corporation (Sheraton Overseas), Sheraton Middle East Management Corporation (Sheraton Middle East), and John Veelenturf, now move to dismiss plaintiffs complaint for forum non conveniens. They argue that Saudi Arabia is an adequate alternative forum and that private and public interests weigh in favor of dismissal. After hearing and for the reasons set forth below, defendants’ motion to dismiss is DENIED.
BACKGROUND
Plaintiff is a British citizen and resident of Great Britain. While on summer break from her university in 1994, she visited her parents at their home in Jeddah, Saudi Arabia. On August 23, 1994, she and her sister met two of their friends at the Red Sea Beach Resort, which is part of the Sheraton Jeddah Hotel and Villas (Jeddah Sheraton).[2] The resort complex on that date encompassed a beach, a large concrete wharf, a wooden platform or jetty and a lagoon. Coral stretched out from under the jetty and around the edge of the lagoon. Plaintiff struck her head on this coral when she dove into the lagoon from the jetty. She lay in the water, face down and unable to move, until she was pulled out and taken to a nearby hospital.
Plaintiff sustained a high level spinal injuiy as a result of her dive. She spent approximately three months in a Saudi hospital, where she underwent surgery to fuse her spine, before transferring to a hospital in England. She remained in the English hospital for 18 months. Today, plaintiff is tetraplegic. She cannot move her left arm or either of her legs and is limited to minimal movement of her right arm. Unable to care for herself, plaintiff requires assistance for daily activities such as eating, bathing, dressing, changing her catheter and emptying her bowels. She attempted to finish her degree in accounting and financing but could not take certain required courses due to her disabilities. Plaintiffs expert estimates that her medical expenses resulting from the accident will exceed ten million dollars.
DISCUSSION
Under G.L.c. 223A, §5, I may dismiss or stay an action upon finding “that in the interest of substantial justice the action should be heard in another forum.” Massachusetts courts have incorporated into the state fomm non conveniens analysis standards and principles enunciated in federal cases discussing the federal common law doctrine. See New Amsterdam Casualty Co. v. Estes, 353 Mass. 90, 95 (1967); Green v. Manhattanville College, 40 Mass.App.Ct. 76, 78, cert. denied, 422 Mass. 1107 (1996) (same analysis under G.L.c. 223A, §5, as under common law doctrine of forum non conveniens). The forum non conveniens inquiry involves two steps. See Mercier v. Sheraton Int’l, Inc., 935 F.2d 419, 423-24 (1st Cir. 1991), cert. denied, 508 U.S. 912 (1993). First, I must consider whether an adequate alternative forum is available. If an adequate alternative forum does exist, I then must determine whether private and public interests strongly favor litigating the claim in that forum. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1946).
1. Adequate alternative forum
Defendants cite federal cases granting motions to dismiss on forum non conveniens grounds when the *356 alternative forum was Saudi Arabia. Implicit in these decisions is an acceptance of Saudi Arabia as an adequate alternative forum. None of the cases, however, addressed concerns similar to those raised by plaintiff. See, e.g., Forsythe v. Saudi Arabian Airlines Corp., 885 F.2d 285, 290 (5th Cir. 1989) (parties previously agreed to bring all disputes before Saudi tribunal and nothing indicated that Saudi forum would treat plaintiff unfairly); Kamel v. Hill-Rom Co., Inc., 108 F.3d 799, 801 (7th Cir. 1997) (male plaintiff was citizen of Saudi Arabia); Shields v. Mi Ryung Constr. Co., 508 F.Supp. 891, 896 (S.D.N.Y. 1981) (plaintiff attempted to “cast aspersions” upon Saudi legal system without any supporting evidence); Tisdale v. Shell Oil Co., 723 F.Supp. 653, 654-55, 659 (M.D. Ala. 1987) (in absence of undue influence, unequal bargaining or evidence that Saudi law is inadequate, choice of forum clause requiring that all disputes be referred to Saudi Labor Commission is enforceable); Jeha v. Arabian Am. Oil Co., 751 F.Supp. 122, 125-26 (S.D. Tex. 1990), aff'd, 936 F.2d 569 (5th Cir. 1991) (plaintiffs offered no evidence that Saudi forum was inadequate). Although my finding regarding the private and public interests in this case renders a final determination as to the adequacy of a Saudi forum unnecessary, I note that plaintiff would face significant procedural disadvantages in Saudi Arabia.[3] See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n.22 (1981) (forum is inadequate when there is danger that plaintiff will be treated unfairly).
The first significant drawback to trial of this case in Saudi Arabia is that plaintiff would not be permitted to testify. See Supplemental Affidavit of Frank E. Vogel, at 3. All parties are presumed to be prejudiced in favor of themselves and therefore are not considered to be reliable witnesses. Id.; Supplemental Affidavit of Hassan Mahassni, at 3. Plaintiff could submit written assertions that would be made part of the record. Id. If a defendant were to deny any assertion made by plaintiff, however, she would be forced to prove that assertion by other means. Id.
Plaintiffs ability to prove her allegations would also be limited by the fact that Saudi courts give more weight to oral testimony than written testimony. See Peter D. Sloane, The Status of Islamic Law in the Modern Commercial World, 22 Int’l L. 743, 751 (1988). Thus, defendants’ oral testimony that they took certain safety precautions would carry more weight than any documents plaintiff could submit to rebut their testimony.[4] Prevailing in Saudi Arabia would be even more difficult for plaintiff in light of the requirement that, “(i]n financial matters, a party must produce two male witnesses or one male and two female witnesses in order to prove a point.” Id.
Another disadvantage to a Saudi forum is that Saudi courts do not follow any uniform rules of procedure. Joseph L. Brand, Aspects of Saudi Arabian Law and Practice, 9 B.C. Int’l & Comp. L.R. 1, 11 (1986). Every party to a case, “sitting and facing the qadi (the judge), conversationally presents its evidence which the qadi hears and weighs.” Id. Cross-examination is limited, if allowed at all. Id. at 12 n.62 (“The qadi usually denies cross examination and when he allows it, only he directs the questions suggested by the examining party”). The qadi decides when enough evidence has been heard and at that point announces a decision in open court. Id. at 12. Saudi Arabia does not offer parties the opportunity to be heard by a jury. Id. at 30.
In addition to no rules of civil procedure, no system of binding judicial precedent or case law exists in Saudi Arabia. Nancy B. Turck, Dispute Resolution in Saudi Arabia, 22 Int’l Law. 415, 443 (1988); Brand, supra at 11. Plaintiff would not be able to predict or expect any particular rulings on issues of law that are established in Massachusetts. That this and the other procedural differences would apply equally to the defendants does not minimize that fact that a Saudi forum would deprive plaintiff of basic procedures which she expects to enjoy in a Massachusetts forum.
Finally, the existence of biases against women and non-Muslims in Saudi Arabia would impose additional disadvantages on plaintiff. Defendants’ expert attributes the differential treatment based on gender and religion to “long-standing, well-known provisions in the law.” Supplemental Affidavit of Frank E. Vogel at 2. Although defendants promise to ensure that any recovery by plaintiff in a Saudi court would not be diminished because of her gender and religion, their guarantee cannot insulate plaintiff entirely from the systemic prejudices.
2. Private and public interests
Even if the cumulative effect of the factors discussed above were not enough to deem Saudi Arabia an inadequate alternative forum, dismissal still would be improper if private and public interests weigh in favor of trial in Massachusetts. Mercier v. Sheraton Int’l Inc., 935 F.2d at 427. The “guiding principle” of the forum non conveniens analysis is that a plaintiffs “choice of forum should rarely be disturbed unless the balance of both private and public concerns strongly favors the [defendants’] motion.” Green v. Manhattanville College, 40 Mass.App.Ct. at 79. Defendants bear the burden of “showing circumstances so strongly in [their] favor that plaintiff! ] should be denied [her] right to bring suit in Massachusetts.” See Minnis v. Peebles, 24 Mass.App.Ct. 467, 473 (1987); Walton v. Harris, 38 Mass.App.Ct. 252, 258, cert. denied, 420 Mass. 1102 (1995). Having balanced the factors set forth below, I conclude that defendants have not satisfied their burden.
Private interests considered in the forum non conveniens analysis include the relative ease of access to sources of proof; the availability of compulsory process to obtain testimony of unwilling witnesses; the cost of obtaining attendance of willing witnesses; and any *357 practical factors that would make the trial easy, expeditious, and inexpensive.[5] W.R. Grace & Co. v. Hartford Accident & Indem. Co., 407 Mass. 572, 578 (1990); Green v. Manhattanville College, 40 Mass.App.Ct. at 80; Mercier v. Sheraton Int’l, Inc., 935 F.2d at 424.
Overall ease of access to sources of proof does not point strongly to either forum. On the issue of liability, defendants have access to their own corporate documents which, according to ITT Sheraton’s senior vice president, are located in Boston, Egypt, and Saudi Arabia. On the issue of damages, plaintiff has accepted the burden of producing all relevant medical documents whether located in England or Saudi Arabia.
Access and cost considerations related to witnesses favor trial in Massachusetts. Defendants’ argument that they cannot compel attendance at trial in Massachusetts of “(a]ll of the eyewitnesses to the incident” is unavailing for several reasons. First, eyewitnesses to the accident include plaintiff, her sister, and her friends. Defendants do not argue that these witnesses would be unwilling to appear in Massachusetts; presumably they would be present at their own or plaintiffs expense. Only one of the two resort employees who were in the beach area at the time of the accident actually witnessed plaintiffs dive. Both of these witnesses continue to work for the Jeddah Sheraton. Defendants have presented no evidence that either of them would be unwilling to appear at trial in Massachusetts. Moreover, plaintiff alleges that her accidentwas caused by defendants’ negligence. Defendants do not claim any inability to compel attendance of witnesses related to the alleged negligence, many of whom are defendants’ employees and live in New England.
Regarding the two languages involved in this case, the private interest in making the trial “easy, expeditious, and inexpensive” also is furthered by a Massachusetts forum. See W.R. Grace & Co. v. Hartford Accident & Indem. Co., 407 Mass. at 578. All court proceedings in Saudi Arabia are in Arabic. Turck, supra at 441. A trial conducted in Arabic would have at least two adverse consequences. First, whereas all the parties and most if not all the witnesses speak English, some — including plaintiff — do not speak Arabic. The parties would be forced to rely on translators, significantly increasing the costs of litigation.[6] Second, all documents submitted to a Saudi court must be translated into Arabic. Id. If the Sheraton International Management Agreement is any indication, many if not all of the corporate documents are in English.[7] As for medical documents, only records for the three months that plaintiff spent in a Saudi hospital might already be in Arabic; records for more than 35 months of treatment would need to be translated from English.
Factors of public interest include administrative burdens; trying a diversity case in a forum that is at home with the applicable law; avoidance of unnecessary problems in conflict of laws; and unfairness of burdening citizens in an unrelated forum with jury duty. W.R. Grace & Co. v. Hartford Accident & Indem. Co., 407 Mass. at 578; Mercier v. Sheraton Int’l, Inc., 935 F.2d at 424.
At this stage, when the parties have not had an opportunity to submit briefs on choice of law, it is unclear what substantive law governs. Defendants assume that Saudi Arabian tort law is applicable based on Massachusetts choice of law principles. These principles do not clearly point to Saudi law;[8] several factors appear to favor Massachusetts law.[9] Even if Saudi law were to apply, application of a foreign law, while not ideal, need not be a determinative factor in the forum non conveniens analysis. See Kearsarge Metallurgical Corp. v. Peerless Ins. Co., 383 Mass. 162, 169 (1981) (court declined to dismiss action governed by other than Massachusetts substantive law).
Public interest considerations weighing in favor of trial in Massachusetts include the fact that this is the corporate defendants’ home forum, see Reid-Walen v. Hansen, 933 F.2d 1390, 1400 (8th Cir. 1991) (“The defendant’s home forum always has a strong interest in providing a forum for redress of injuries caused by its citizens”), and that defendants’ alleged negligence occurred at least in part in Massachusetts. Trial in Massachusetts therefore would not burden local jurors with an entirely foreign controversy. See Howe v. Goldcorp Invs., Ltd., 946 F.2d 944, 947 (1st Cir. 1991), cert. denied, 502 U.S. 1095 (1992) (relation between chosen forum and lawsuit must not be so attenuated that case is an “imposition” on chosen court). Cf. Jeha v. Arabian Am. Oil Co., 751 F.Supp. at 126 (dismissal for forum non conveniens appropriate when only connection to chosen court was location of principal office of defendant’s subsidiary, a nonparty); Shields v. Mi Ryung Constr. Co., 508 F.Supp. at 894 (dismissal for forum non conveniens appropriate when defendants’ operation in chosen forum had “absolutely nothing to do" with lawsuit).
No public interest factor at this point clearly weighs in favor of a Saudi forum. Plaintiffs choice of forum should not be disturbed solely because she is a British citizen and resident of Great Britain. See Long v. E.I. DuPont de Nemours & Co., 886 F.2d 628, 634 (3d Cir. 1989) (foreign plaintiffs choice of forum should not automatically be denied full deference); Nieminen v. Breeze-Eastern, 736 F.Supp. 580, 583-84 (D.N.J. 1990) (reluctance to grant foreign plaintiff full deference may be overcome by evidence that choice of forum is based on convenience). Cf. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 n. 23 (1981) (court may give less weight to foreign plaintiffs choice of forum). Moreover, defendants have failed to establish that the Saudi court system is sufficiently less conjested than the Massachusetts court system to justify dismissal of plaintiffs complaint.
*358 ORDER
For the foregoing reasons, this Court orders that defendants’ motion to dismiss for forum non conveniens is DENIED.

Neither the Jeddah Sheraton nor its Saudi owner, Saudi Brothers Commercial Company, is a defendant. Under the Sheraton International Management Agreement between Sheraton Middle East and the Saudi Brothers Commercial Company, Sheraton Middle East manages and operates the Jeddah Sheraton. Sheraton Middle East is a wholly owned subsidiary of ITT Sheraton. At all times relevant to this action, ITT Sheraton employed John Veelenturf as a Vice President and Director of Fire, Life Safety and Environmental Health. Veelenturf now is retired and living in Maine. ITT Sheraton also owns Sheraton International, which granted Saudi Brothers Commercial Company a license to use certain Sheraton trademarks. The final defendant, Sheraton Overseas, is a wholly owned subsidiary of Sheraton International. Each of the corporate defendants is a Massachusetts citizen with its principal place of business in Boston.

Plaintiff also would be disadvantaged if Saudi substantive law were to govern this case, as discussed in footnote 9.

The lack of pretrial discovery procedures in Saudi Arabia would stymie plaintiffs ability to offer such documents. David J. Karl, Note, Islamic Law in Saudi Arabia: What Foreign Attorneys Should Know, 25 Geo. Wash. J. Int’l L. & Econ. 131, 150 (1992). Although according to defense expert Frank E. Vogel parties may request that the court demand any necessary documents from another party, the court need not exercise its wide discretion in her favor.

Another factor courts consider is the possibility of a view. Defendants argue that photographs of the accident site would be insufficient, especially because the scene has been altered by third-parties. If the scene has been altered, however, there is no purpose in viewing it, and therefore this factor is inapplicable.

 defendants have not identified which, if any, witnesses do not speak English; it is clear that if there is a need for translation in a Massachusetts trial, it would be' less than that in a Saudi trial.

The agreement provides that English shall be the language used in arbitration.

Sources of Massachusetts choice of law principles include the Restatement (Second) of Conflict of Laws and Professor R.A. Leflar’s American Conflicts Law. Bushkin Assocs., Inc. v. Raytheon, Inc., 393 Mass. 622, 632-34 (1985). Under the Restatement, factors relevant to the choice of law are the needs of interstate and international systems; relevant policies of the forum; relevant policies and interests of other interested states; protection of justified expectations; basic policies underlying particular field of law; certainty, predictability and uniformity of result; and ease in the determination and application of the lawto be applied. Restatement (Second) of Conflict of Laws at §6(2) (1971). Considerations proposed by Professor Leflar are predictability of results; maintenance of interstate and international order; simplification of judicial task; advancement of forum’s governmental interests; application of the better rule of law. R.A. Leflar, American Conflicts Law §95, at 279 (4th ed. 1986).

For example, the better rule of law in a tort case probably would be that of Massachusetts. Saudi tort law is “subsumed under private actions and do[es] not exist as a distinct and highly developed field of law.” Brand, supra at 28. Given the theory of liability in this case, it also is significant that Saudi law does not recognize agency within the concept of torts. Id. (general Islamic philosophy is that one is always responsible for one’s own acts). Moreover, consequential, indirect, and speculative damages generally are viewed as nonrecoverable through a Saudi court. Turck, supra at 441. If she establishes defendants’ liability, plaintiff could only expect to recover actual medical expenses and a fraction of her “diyah," which is a fixed amount of compensation for personal injury.