The New York Life Insurance and Trust Company, as Trustee under the Will of Mary Griffin, Deceased, Respondent, *v.* Terese Viele et al., Respondents, and Anna Maria Louisa Natalia Reichelt et al., Appellants.

1. Will — Execution in Foreign Country — Retention of Domestic Domicile by Testatrix — Domestic Will. A finding of fact, unanimously affirmed by the Appellate Division, that the original domicile in this state of a testatrix whose will was executed, according to the laws of this state, in a foreign country, where she then resided and where she died, was never changed, and that, when she made the will, and up to the time of her death, her legal domicile was in this state, concludes the Court of Appeals with respect to the domicile of the testatrix, and renders the will a domestic will.

2. Law of Domicile. The law of the domicile must prevail in the interpretation of wills.

3. Meaning of "Lawful Issue." The words "lawful issue," when used in a domestic will, primarily and generally mean descendants; and where there is nothing to the contrary in the context, or in extraneous facts proper to be considered, that is the sense in which they are presumed to be used in a will.

4. "Lawful Issue" Meaning Descendants and not Adopted Children — Status of Adopted Child under Laws of Foreign Country of Adoption not Material. When the context of a domestic will, governed by the rules of interpretation prevailing in this state, clearly shows that, in a devise of a remainder to the "lawful issue" of one of her daughters, the testatrix intended descendants and not adopted children, although she knew that her daughter had legally adopted a child in a foreign country, where the daughter and child lived, and where the testatrix resided at the time of making the will, such intention controls the construction, and the conventional status of the adopted child under the laws of the country of its adoption, or under the civil law, is not pertinent, and it is immaterial whether, under those laws, the child would be considered to be the lawful issue of the testatrix's daughter.

*N. Y. Life Ins. & Trust Co.* v. *Viele,* 22 App. Div. 80, affirmed.

(Argued October 19, 1899; decided November 21, 1899.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 24, 1897, upon an order affirming a judgment entered upon the report of a referee.

This action was brought for the construction of the will of Mary Griffin, deceased, the settlement of the accounts of plaintiff as trustee and the distribution of the estate.

The facts, so far as material, are stated in the opinion.

*Charles E. Hughes* and *Arthur C. Rounds* for appellants. The appellant Heinicke, as the adopted child of Mrs. Lengnick, has the status of her " lawful issue," and as such is entitled to take the remainder under item third of Mrs. Griffin's will. The term " lawful issue " is descriptive of legal relationship and connotes all persons who, under the law applicable thereto, have the status of descendants. (*Matter of Newman,* 75 Cal. 213; *Ross* v. *Ross,* 129 Mass. 243; *Burrage* v. *Briggs,* 120 Mass. 103; *Van Matre* v. *Sankey,* 148 Ill. 536; *Fosburgh* v. *Rogers,* 114 Mo. 122; *Moran* v. *Stewart,* 122 Mo. 295; *Power* v. *Hafley,* 85 Ky. 671; *Gray* v. *Holmes,* 57 Kans. 217; *Humphries* v. *Davis,* 100 Ind. 274; *Atchison* v. *Atchison,* 89 Ky. 488.) As the context fails to show any different intention the words " lawful issue " in item third must be taken to embrace all persons who, surviving Mrs. Lengnick, had the status of her descendants. (*Overlander* v. *Spiess,* 45 N. Y. 175; *Armstrong* v. *Du Bois,* 90 N. Y. 95; *Matter of Green,* 153 N. Y. 223; *Hay* v. *Earl of Coventry,* 3 T. R. 83; *Earl of Scarborough* v. *Doe,* 3 Ad. & El. 897; *Bagshaw* v. *Spencer,* 2 Atk. 570; *Thelluson* v. *Rendlesham,* 7 H. L. Cas. 429; *Luce* v. *Dunham,* 69 N. Y. 36; *Keteltas* v. *Keteltas,* 72 N. Y. 312; *Johnson* v. *Brasington,* 156 N. Y. 181.) The status of the appellant Heinicke, as an adopted child, is to be determined by the law of Saxony. (*Gray* v. *Holmes,* 57 Kans. 217, 219; *Woodward* v. *Woodward,* 87 Tenn. 644; *Miller* v. *Miller,* 91 N. Y. 315; *Dayton* v. *Adkisson,* 45 N. J. Eq. 603; *De Wolf* v. *Middleton,* 18 R. I. 817; Story on Confl. of Laws, § 93; Wharton on Confl. of Laws, § 240; *Ross* v. *Ross,* 129 Mass. 243; *Van Matre* v. *Sankey,* 148 Ill. 536; *Markover* v. *Krauss,* 132 Ind. 294; *Melvin* v. *Marlin,* 18 R. I. 650.) By her formal adoption the appellant Heinicke acquired the status of lawful issue of

Mrs. Lengnick. (Code Civ. Pro. § 942; Code of Saxony, §§ 1787, 1797; *Bremer* v. *Freeman*, 10 Moore P.C. 306; *Dupuy* v. *Wurtz*, 53 N. Y. 571; *Markover* v. *Krauss*, 132 Ind. 294; *Gray* v. *Holmes*, 57 Kans. 217; *Ross* v. *Ross*, 129 Mass. 262; *Vidal* v. *Commagere*, 13 La. Ann. 516; *Gray* v. *Holmes*, 57 Kans. 217; *Power* v. *Hafley*, 85 Ky. 671; *Sewall* v. *Roberts*, 115 Mass. 262.) The will, so far as it relates to personalty, must be construed according to the law of Saxony, where the testatrix was domiciled at the time of her death, and in accordance with that law the appellant Heinicke was entitled to take the remainder under item third as Mrs. Lengnick's lawful issue. (*Chamberlain* v. *Chamberlain*, 43 N. Y. 424; *Cross* v. *U. S. T. Co.*, 131 N. Y. 330; *Dammert* v. *Osborn*, 140 N. Y. 30; *Caulfield* v. *Sullivan*, 85 N. Y. 153; Theobald on Wills [4th ed.], 6–8; *King* v. *Foxwell*, L. R. [3 Ch. Div.] 518; *Elbers* v. *U. Ins. Co.*, 16 Johns. 128; *Ennis* v. *Smith*, 14 How. [U. S.] 400; *Cockrell* v. *Cockrell*, 25 L. J. [Ch.] 730; *Matter of Grove*, L. R. [40 Ch. Div.] 216; *The Harmony*, 2 C. Rob. Adm. 322.) In accordance with the law of Saxony the appellant Heinicke is entitled to take the remainder under item third as Mrs. Lengnick's lawful issue. (*Trotter* v. *Trotter*, 4 Bligh, 502; *Enohin* v. *Wylie*, 10 H. L. Cas. 4; *Bremer* v. *Freeman*, 10 Moore P. C. 306.)

*Severyn B. Sharpe* for respondents Viele et al. The words "living lawful issue" in the third item of the will of Mary Griffin do not include adopted children. (*Soper* v. *Brown*, 136 N. Y. 248; *Chwatal* v. *Schreiner*, 148 N. Y. 688; *Drake* v. *Drake*, 134 N. Y. 220; *Covenhoven* v. *Shuler*, 2 Paige, 122; *Crosby* v. *Wendell*, 6 Paige, 548; *Pond* v. *Bergh*, 10 Paige, 140; *Morton* v. *Morton*, 2 Edw. Ch. 457; *Kelso* v. *Lorillard*, 85 N. Y. 181; *Van Kleeck* v. *Dutch Church*, 20 Wend. 457; *Quinn* v. *Hardenbrook*, 54 N. Y. 86.) The will must be construed according to the law of the state of New York where the testatrix had her domicile at the time of her death. (*Dupuy* v. *Wurtz*, 53 N. Y. 562; *Tucker* v. *Field*, 5 Redf. 139; *Caulfield* v. *Sullivan*, 85 N. Y. 153.) Even though

Mrs. Griffin was domiciled in Dresden the words "lawful issue" can only mean the descendants by blood of her daughter Emily, and do not include adopted children. (*Savage* v. *O'Neil*, 44 N. Y. 301; *Jenkins* v. *Jenkins*, 64 N. H. 407; *Schafer* v. *Eneu*, 54 Penn. St. 304; *Wyeth* v. *Stone*, 144 Mass. 441; *Reinders* v. *Koppelman*, 94 Mo. 338; *Russell* v. *Russell*, 84 Ala. 48.)

*R. E. Robinson* for insurance and trust company, respondent. The words "lawful issue" do not include adopted children. (*Barnes* v. *Greenzebach*, 1 Edw. Ch. 41; *Hussey* v. *Berkeley*, 2 Eden, 194; *Hussey* v. *Dillon*, Ambler, 603; *Bray* v. *Miles*, 54 N. E. Rep. 446; *Schafer* v. *Eneu*, 54 Penn. St. 304; *Wyeth* v. *Stone*, 144 Mass. 441; *Reinders* v. *Koppelman*, 94 Mo. 338; *Russell* v. *Russell*, 84 Ala. 48; *Jenkins* v. *Jenkins*, 64 N. H. 407; *Ballard* v. *Ward*, 89 Penn. St. 358.) The unanimous affirmance by the Appellate Division of a judgment is conclusive upon this court as to facts necessary to support the judgment, whether such facts be expressly found or are to be implied. (*Dupuy* v. *Wurtz*, 53 N. Y. 556; *People ex rel.* v. *Barker*, 152 N. Y. 417.)

O'Brien, J.  This appeal involves the construction of the third clause of the will of Mary Griffin, who died on the 9th day of March, 1888, at Dresden, in the kingdom of Saxony, one of the states of the German empire.  She was the widow of Francis Griffin, of the city of New York, who died there in the year 1852, and the bulk of the property which the testatrix disposed of by the will in question came to her from her deceased husband.  This will bears date July 6th, 1878, and a codicil thereto July 28th, 1882.  Both instruments were executed at Dresden, where the testatrix had resided for over thirty years prior to her death, and relate to both real and personal property.  The real estate is situated within this State, and the personal, consisting of bonds, stocks and other securities, was all substantially under the control and management of the plaintiff, the testatrix receiving the rents and income thereof.

The will was executed according to the laws of this state and has been proved here, and the executors appointed resided here. The execution of the trusts and the management of the estate have devolved on the plaintiff, under certain provisions of the will framed for that purpose. The testatrix, after making certain specific bequests, disposed of the residuary estate in trust for the benefit of her children and grandchildren. The true meaning and construction of the trust provision for her daughter Emily has given rise to the present controversy, and that is the only question involved in the appeal. This provision is found in the third item of the will, and is in the following language :

"*Item Third.* I direct my said executors to safely invest and keep invested one equal one-third part of my residuary estate, and to receive and collect the rents, issues and profits thereof, and to apply the net income derived therefrom to the use of my daughter, Emily S. Lengnick, during her natural life. Upon her decease I direct that the principal of such share be paid over or transferred by my executors to her then living lawful issue, if any, and if she leaves her surviving no such issue, I direct that the same be then added in equal parts or proportions to the principal of the several shares of my residuary estate hereinafter directed to be held in trust for my ten grandchildren hereinafter named. But if at the decease of my daughter Emily, leaving her surviving no lawful issue, either of these ten grandchildren shall be deceased and there shall be living lawful issue of him or her, I direct that the part or proportion which would so be added to the share held in trust for such grandchild, if living, be then paid over or transferred by my executors to such issue (*per stirpes*). And if either of my said ten grandchildren shall die before my daughter Emily leaving no lawful issue who so survive her, I in that case direct that the part or proportion which would so be added to the share held in trust for such grandchild, if living, be paid over or transferred by my executors upon the decease of my said daughter to such of my said grandchildren as are then living, and to the then living law-

ful issue (taking *per stirpes*) of such of them as are then deceased."

The record shows that Emily was married in the year 1857 to Carl Emil Lengnick, an officer in the Saxon army, with whom she lived until her death on August 3d, 1893. There were but two children of this marriage, both of whom predeceased the testatrix, dying in the year 1872. It will be seen by the clause of the will above quoted that a remainder was limited upon the life estate of Emily in favor of her "lawful issue," if any survived her, but if not, then over to the other grandchildren of the testatrix for whose benefit trusts were created by other clauses of the will.

The courts below have determined that since Emily died without descendants, the remainders limited upon her life estate devolve upon the other grandchildren in the proportions specified in the provision quoted. The correctness of this determination could hardly be questioned but for a peculiar state of facts existing when the will was made, and at the time of the death of the testatrix.

It appears that in the year 1876 the defendant Olga Felicitas Heinicke, a niece of Emily's husband, was legally adopted by them in accordance with the law of the kingdom of Saxony and taken into their family with all the rights conferred by such relation under the law of that country. The legal status conferred upon this adopted child by the law of the place will sufficiently appear from the following provisions of the Saxon Code, which it is admitted are based largely upon the doctrines of the civil law : " Section 1787. The taking into the relation of children, adoption, can only take place by contract made or acknowleged in court and approved by the Sovereign of the adopting party." " Section 1797. The reciprocal legal relationship between an adopted child and the adopting party is the same as that between a child of the marriage and its parents, in so far as it is not otherwise provided in the contract of adoption." " Section 1808. Children begotten during wedlock and born during the lifetime of their father are from their birth under the paternal power. The same is true

of illegitimate children on the subsequent marriage of their parents, accompanied by a decree of legitimacy by the Sovereign, and adopted children on the approval by the Sovereign of their adoption, unless they stand in the relations which, according to sections 1832 and 1833, would abolish the paternal power."   " Section 2044. Adopted children inherit from the adopting party the same as children of marriage, unless otherwise provided in the contract of adoption, subject to the restriction contained in section 2568."   " Section 2046. If before the death of the adopting party an adopted son dies leaving descendants born in wedlock, or an adopted daughter dies leaving descendants born in or out of wedlock, such descendants inherit the same share which their father or mother would have taken."   " Section 2567. Adopted children and their descendants have the same right to an obligatory share against the party adopting them as descendants of marriage, unless otherwise provided in the contract of adoption."

The articles of adoption and the royal decree approving the same appear in the record, and they contain nothing limiting or restricting in any way the rights conferred by the Code upon the children by adoption.   Subsequently, Emily and her husband took into their family two other nieces of the husband, who were cared for and treated as children, but were never legally adopted.   They have been brought in as defendants in this action, but we do not understand that any serious claim to share in the estate in question has been or can be made in their behalf.

But the learned counsel who has appeared for Olga has presented to the court her claim to the remainder, limited on the life estate of her parent by adoption, in a very learned and elaborate argument.   It is not too much to say that his industry has explored practically every source of knowledge on the subject.   The reasoning in support of his contention, and the collection of authorities to sustain it, has given to the question involved an interest beyond what it would seem to

3

merit from first impressions. The proposition sought to be established is, that Olga is the lawful issue of Emily, though not related to her by blood, and so entitled to take the remainder under the terms of the will, in the trust share of her parent by adoption. The main postulate in support of this contention is, that the legal status of an adopted child, acquired by the law of adoption, is by the law of comity recognized in every other jurisdiction where such status becomes material in determining the right to take property by will or inheritance. The authorities cited seem to give much support to this proposition, and so far as it is involved in or material to this case we need not question it. (*Miller* v. *Miller*, 91 N. Y. 315; *Ross* v. *Ross*, 129 Mass. 243; *Burrage* v. *Briggs*, 120 Mass. 103; *Buckley* v. *Frasier*, 153 Mass. 525; *Sewall* v. *Roberts*, 115 Mass. 262; *Tirrell* v. *Bacon*, 3 Fed. Red. 62; *Hartwell* v. *Tefft*, 19 R. I. 644; *Warren* v. *Prescott*, 84 Me. 483; *Patterson* v. *Browning*, 146 Ind. 160; *Markover* v. *Krauss*, 132 Ind. 294; *Atchison* v. *Atchison*, 89 Ky. 488; *Estate of Rowan*, 132 Pa. St. 299; *Humphries* v. *Davis*, 100 Ind. 274; *Power* v. *Hafley*, 85 Ky. 671; *Gray* v. *Holmes*, 57 Kan. 217; *Van Matre* v. *Sankey*, 148 Ill. 536.)

It is said that the status of Olga must be determined by the statutes of Saxony, construed with reference to the doctrines of the civil law upon which they are based, and thus construed, she has all the rights of a child born in wedlock. In the language of the civilians, being an agnate of the adopting parents she has become a cognate of the members of the family, and so the conclusion is reached that she is, in law, not only the child of Emily, but the grandchild of the testatrix. If the will in question was to be construed according to the foreign law, or the civil law, the argument would doubtless be much stronger than it is, although even then the construction placed upon the Saxon Code by the aid of the civil law, which confers upon an adopted child the status of a child of the marriage, not only with respect to the adopting parents, but all the other members of the family as well, would be difficult to maintain, since there is no finding of fact

that gives such construction to the words of the Code and foreign laws must be construed in the same light as facts.

But we do not consider it important to determine the precise status of this adopted child, since in the view we are disposed to take of the case it is not material whether she would be considered, under the law of the country of her adoption or under the civil law, to be the lawful issue of Emily or not. Whatever status was conferred upon her by the act of adoption was purely conventional.

The meaning and intention of the testatrix in the use of the words "lawful issue" in her will must be ascertained by the application of the rules and principles sanctioned by the courts of this state in the construction and interpretation of wills. The will in question is not a foreign but a domestic will. The fact that the deceased resided in Saxony for over thirty years does not affect the legal character of the instrument by which she disposed of her property. The referee who tried the case found as a fact that the testatrix never changed, or intended to change, her domicile of origin, but that when she made the will, and up to the time of her death, her legal domicile was in the city of New York. This finding, unanimously affirmed in the court below, concludes us with respect to the domicile of the testatrix, and it is so well settled that the law of the domicile must prevail in the interpretation of wills that any discussion of that principle is unnecessary. (*Dupuy* v. *Wurtz*, 53 N. Y. 556; *Moorhouse* v. *Lord*, 10 H. L. Cas. 283.) An inquiry in regard to the legal domicile of a party, involving as it generally does the intention to abandon one or acquire another, presents a question of fact to be determined upon all the circumstances of the particular case, and certainly this case is no exception to that rule. We must accept the finding of the referee upon that question, since the Constitution and the statute so command, even if the facts and circumstances upon which the finding is based were not so satisfactory and persuasive as they appear to be.

The words "lawful issue," when used in a domestic will, primarily and generally mean descendants. (*Palmer* v. *Horn*,

84 N. Y. 519 ; *Chwatal* v. *Schreiner*, 148 N. Y. 683 ; *Palmer* v. *Dunham*, 125 N. Y. 68 ; *Soper* v. *Brown*, 136 N. Y. 244 ; *Drake* v. *Drake*, 134 N. Y. 220 ; *Johnson* v. *Brasington*, 156 N. Y. 181.) Where there is nothing to the contrary to be found in the context of the instrument or in extraneous facts proper to be considered, that is the sense in which they are presumed to be used in a will. The real question in this case is whether the testatrix used them in that sense or in some other sense. In giving construction to the words used by the testatrix in a domestic will, we cannot assume, without the clearest evidence, that she used the words "lawful· issue" in the sense that they might possibly bear in the Code of Saxony or that they might be understood by the Roman civilians. Therefore, the question is not what was the precise status of Olga as an adopted child under the Saxon law or under the civil law, but what the testatrix meant when she devised the remainder to the "lawful issue" of Emily.

We think that the context of the instrument shows quite clearly that she used these words in their primary and general sense as including descendants and not children by adoption.

The ten grandchildren of her own blood, for whose benefit she constituted the other two trusts in her will, represented two families, descendants of her husband, from whom the property came. They were the children of another daughter still living and of a son who died before the testatrix. It seems that the relations between this daughter and her mother were not friendly, and the only provision made for the former was in the form of an annuity, to which the share of her children was subject by the terms of the will. . The grandchildren constituting these two families, ten in all, are carefully enumerated in the will by name as life beneficiaries of two-thirds of the residuary estate, with remainder to their lawful issue. The testatrix, when she made the will and codicil, knew of Olga's adoption and of her relations to the family of Emily, the other daughter, and her husband. It is quite difficult, in view of these facts, to believe that, if the testatrix intended to make a gift to a child by adoption of a remainder

in one-third of the estate, that she would omit to mention her name in any part of the will, whereas she did name all her grandchildren by blood.  If Olga was intended to be included in the words " lawful issue," she would take, after the death of Emily, one-third of the residuary estate in fee, whereas each of the ten grandchildren by blood would take a life estate only in about one-fifteenth.  In the distribution of her property by the testatrix, such a marked discrimination in favor of an adopted child of her daughter and son-in-law, who was in no way related to her by blood, and against her own descendants, would seem to call for some explanation, and none appears either upon the face of the will or in the surrounding circumstances.  A construction of the will should not be favored that would impute to the testatrix an intention apparently so unjust and improbable.  If there was any intention to make a gift to Olga of any part of the estate, it is reasonable to suppose that the testatrix would have mentioned her by name as she did her grandchildren in blood.  It would be an extreme and almost fanciful construction that would impute to her an intention to make a gift of such a large portion of her estate to one who occupied no other relation to her than that arising from the fact that she had been legally adopted by her son-in-law and his wife.  The words " lawful issue," when applied to Olga, became so ambiguous, at least, that they could not have been used by the testatrix for the purpose of making a gift to her daughter's adopted child, without at the same time contemplating that they must create and be followed by litigation and discord in the settlement of the estate.

But there is another provision of the will which shows quite clearly that the testatrix could not have intended that the adopted child of Emily should take the remainder in her share.  That provision is as follows : " Item sixth. If my daughter Emily dies before me, I direct that the one-third part of my residuary estate directed to be held in trust for her by the preceding third item of my will be added to the other two shares of my residuary estate so as that one-half of the one-third part or share shall be controlled and disposed of by the

fourth and the other one-half thereof by the fifth item of this my will." In the fourth and fifth items of the will above referred to, trusts are created in the remaining two shares of the estate for the benefit of the ten grandchildren already mentioned, and the sixth item above quoted provides that in case Emily died before her mother then her share should go, not to Emily's adopted child, but should be added to the shares of the ten grandchildren.

It would be difficult to conceive of a clearer indication of the purpose of the testatrix to transmit the whole estate to her own descendants. The meaning and intention of the testatrix with respect to the remainder which was limited upon the life estate of Emily is not, we think, very difficult to perceive. She evidently had in mind what was quite possible, if not probable, that her daughter Emily might have another child, or other children, born to her before the will would take effect, in which event the remainder would vest in them, but in default of such issue then the other grandchildren, her own descendants, were to take. This is altogether the more reasonable construction to place upon the words " lawful issue " in her will, and this view is reinforced by the settled rule of law which favors such an interpretation as will permit the estate to pass to those persons who are in the line of ancestral blood. (*Knowlton* v. *Atkins*, 134 N. Y. 313; *Wood* v. *Mitcham*, 92 N. Y. 375; *Quinn* v. *Hardenbrook*, 54 N. Y. 83; *Scott* v. *Guernsey*, 48 N. Y. 106; *Kelso* v. *Lorillard*, 85 N. Y. 177; *Van Kleeck* v. *Dutch Church*, 20 Wend. 457.)

Moreover, if Olga had been adopted under the statutes of this state, she would be precluded from taking anything under this will by the express words of the law regulating domestic relations (§ 64), and the same result would follow under the decisions of the courts in cases quite analogous. Under the language of the will, and the law governing its interpretation, the expression " lawful issue " denotes the offspring of Emily only. (*Barnes* v. *Greenzebach*, 1 Edw. Ch. 41; *Schafer* v. *Eneu*, 54 Pa. St. 304; *Wyeth* v. *Stone*, 144 Mass. 441.)

We think that the judgment of the court below is right and should be affirmed, with costs to all parties appearing who were awarded costs on the appeal below, to be paid out of that part of the residuary estate disposed of by the third item of the will.

All concur, except MARTIN, J., not sitting.

Judgment affirmed.