Joseph A. Cox, S.
This proceeding is brought to obtain a construction of the testatrix’ will for the sole purpose of determining to what extent, if at all, a child adopted by the testatrix’ grandchild may share in a trust created by the testatrix for the benefit of her grandchild. Most of the pertinent allegations were set forth in a prior opinion of the court (40 Misc 2d 539) which granted a request that a hearing be set for the purpose of introducing proof. In that opinion the areas of permissible proof were circumscribed.
A hearing has been had at which it was established that a child was born to the trust income beneficiary on November 8, 1940. This child was the great-grandchild of the testatrix. Another child was adopted by the trust income beneficiary on October 13, 1949. There was proof that the trust income beneficiary’s mother, the only child of the testatrix, had been adopted in 1901 by her stepfather. The latter, who was the testatrix’ second husband, made provision for this adoptee in his will. It was further established that the testatrix executed her will in 1921, at which date she was a widow of 73 years, and that she died in 1928, At the date of the will testatrix’ granddaughter for whom she created the trust was five years of age. There was received in evidence, without objection, the deposition of an elderly lady who had been a lifelong acquaintance of the testatrix.
The trust for the benefit of the testatrix’ granddaughter provides that upon the death of the income beneficiary the trust remainder be paid to her lawful issue. The will further provides: “ In the event that my said granddaughter, Alexandra Diana Krickl, shall die without leaving issue her surviving, then I direct my said executor and trustee to distribute said residuary estate between the Swedish Home for Aged People in West Brighton, Staten Island and the Swedish Hospital in Brooklyn share and share alike.”
The construction question here presented is whether the adopted child of the trust income beneficiary has a remainder interest in the trust. The sole question is whether the will of the testatrix is expressive of an intention to confer a remainder *316 interest upon an adopted child of the income beneficiary. The legislative policy embodied in section 117 of the Domestic Relations Law and its predecessor statutes is that, in the absence of a contrary testamentary expression, an adopted child shall not be regarded as lawful issue when the effect of such recognition would be to defeat the rights of remindermen. The locution “defeat the rights of remaindermen” has been held to be protective not only of contingent remaindermen who would take in default of issue (here the named charities) but also as protective of the rights of a primary remainderman whose share would be diminished, although not wholly defeated, by recognition of the adoptee as a remainderman (Matter of Ricks, 10 N Y 2d 231). It must be accepted that this restrictive provision of the Domestic Relations Law is applicable to this will unless there can be found in that instrument an expression of a different intention.
The problem here arising is not new but has existed since the initial statute from which section 117 of the Domestic Relations Law is derived (L. 1873, ch. 830). There is a problem only because of the seemingly irreconcilable views expressed in the many decisions which have considered the applicability of the statute. This court reviewed certain of these holdings in Matter of Pryor (38 Misc 2d 722) and there pointed out that the early decisions adopted a strict approach and looked only to the construction of the will read against the language of the statute. This approach was usually adverse to the contentions of adoptees (New York Life Ins. & Trust Co. v. Viele, 161 N. Y. 11; Matter of Leask, 197 N. Y. 193). More recent decisions took a different course and premised conclusions upon evidence far outside the testamentary text. These decisions were not based upon the statements of the testator in his will nor upon objective facts existing at the time of the instrument’s execution. Instead, such opinions sought to fathom the mind of the testator, not merely as to his testamentary dispositions but as to his general mental attitude toward adoption as a social problem (Matter of Ward, 9 A D 2d 950, affd. 9 N Y 2d 722; Matter of Day, 10 A D 2d 220). This new tack was justified upon a ground which now appears to be a misconception of the statutory objective inasmuch as it did not conceive the aim of the statute as either to place an adoptee in a particular posture with respect to natural children or to protect remaindermen designated in a will, but, instead, construed the statutory purpose as one to avoid the perpetration of a fraud upon a testator by means of an adoption designed to create an inheritance. This concept, that the Legislature had in mind the remote possibility that *317 adopted children would he brought into families merely to confer upon them a prospect of inheritance, was discarded in Matter of Rockefeller (12 N Y 2d 124). The necessary consequence of the decision in Matter of Rockefeller, read in conjunction with Matter of Ricks (10 N Y 2d 231, supra), is that the reasoning of the early decisions re-emerges as controlling and the standard to be applied is the construction of the will.
It has long been recognized that the intention of a testator must be sought in the text of his will and the circumstances surrounding its execution. How far may a court go outside of a will to interpret a testator’s use of the term “ lawful issue ” or a similar designation of kinship? In New York Life Ins. & Trust Co. v. Viele (supra, p. 20) the court stated that the words “ lawful issue ” primarily and generally mean descendants and “ [w]here there is nothing to the contrary to be found in the context of the instrument or in extraneous facts proper to be considered, that is the sense in which they are presumed to be used in a will.” In Matter of Rockefeller (supra), in determining the status of an adoptee within the designation 11 issue per stirpes”, it was held (p. 134): “It is sufficient if it affirmatively appears from the context of the will or trust and the extraneous facts proper to be considered that the grantor intended to include adopted children”. In Matter of Upjohn (304 N. Y. 366, 375), the guiding rule is found in the portion of the opinion reading: ‘ ‘ What the testator meant when he used the words ‘ issue ’ and ‘ descendants ’ is not to be decided in vacuo. It is impossible for a court to ascertain the meaning with which they were employed in a particular will without considering the context of the entire instrument and the background of facts and circumstances existing when the will was made. (Cf. Matter of Title Guar. & Trust Co., 195 N. Y. 339, 344.) The rule in this state, declared in New York Life Ins. & Trust Co. v. Viele (161 N. Y. 11, 20), is that the limitation will be construed to designate only those related to the named ancestor by blood if ‘ there is nothing to the contrary to be found in the context of the instrument or in extraneous facts proper to be considered ’. In other words, in the absence of any indication of the testator’s intent, it will be assumed that the testator did not envisage adopted children taking under the limitation. That, though, is a rule of construction and nothing more. Where the testator’s design to include an adopted child is clear, the limitation will be construed to effectuate that intention.” (Italics added.)
It is clear that under all circumstances the court must examine facts and not expressions of opinion and certainly should not *318 attempt to undertake to perform the mental process of a testator vis-a-vis a fact situation which was nonexistent in the testator’s lifetime. It would seem that casual comments by a testator from which may be derived his contemporaneous attitude towards a particular adoptee do not constitute a factual basis for deducing his attitude towards a then unborn adoptee. Morris v. Sickly (133 N. Y. 456, 459-460) stated: “ Circumstances surrounding a testator at the time of the execution of his will may be given in evidence so that the court may see the facts as he saw them, and thus arrive at his intention, where the language alone is of doubtful import. The matter to be determined in the construction of a will is what did the testator intend at the time of its execution? And when that intention is ascertained, it must have effect, if not in conflict with any law. Clearly, circumstances occurring long after the execution of a will could not have been within the contemplation of the testator, and could, therefore, throw no light upon the meaning of language which he then used. While a will is in some sense ambulatory as to the objects and subjects with which it deals, yet it is not ambulatory as to the meaning of the language used by the testator and the intention and purpose which controlled the disposition of his property. That intention and purpose must be found to exist at the time of the execution of the will, and cannot be varied or changed by any after-occurring events. ’ ’
The testimony of the elderly friend of the testatrix has no direct application to the will of the testatrix and, if it did, could not be employed to explain the text of the will (Dwight v. Fancher, 245 N. Y. 71, 74). Such testimony is offered to show the attitude of the testatrix towards certain particular persons and especially a sense of gratitude and appreciation towards her husband and others. This witness attempts to draw a conclusion as to the mental attitude of the testatrix towards adoptees as a class.
The dangers inherent in placing any reliance upon this type of testimony are apparent. It is doubtful that the word 1 ‘ proof ’ ’ can be used in connection with such vague generalizations. The standard of construction always has been the intention of a testator at the date of the will and not at times either prior or subsequent to the execution of that document (Brown v. Quintard, 177 N. Y. 75). Concededly the public attitude towards adopted children has changed over the years and today such children have an improved status not only as to their social position but, by both legislation and judicial decision, in connection with their rights to inherit property. This court, having jurisdiction of adoption proceedings and *319 competent to bear witness to the success of thousands of adoptions, is of the opinion that every effort should be made to grant full recognition to adopted children. Legislation enacted in 1963 is directed to this objective and will serve to eliminate problems of the kind presented in this estate. However, the personal feelings of the court do not permit it either to abandon established rules of law in construing this will or to ignore legislation controlling the construction of this will.
The testimony taken by deposition must be disregarded since it provides no competent basis for construing the text of the will. It is the intention of the testatrix which is solely controlling and this must be found in the will with resort to proper extraneous facts. The words of the will are of no aid to the adoptee. The extraneous facts are that the testatrix had a natural child who was adopted by the testatrix’ second husband. These facts surely indicate that the husband either liked this child or adopted her by reason of his affection for her mother. To say from this that the husband favored all adopted children would be imaginative. To say that the testatrix, who had not adopted a child, favored adopted children not of her blood would be without basis. At the date of her will, and in fact during her lifetime., the testatrix knew nothing of the claimant in this proceeding. This court and the blood relatives of the testatrix would like to see the adopted child share in the estate. It is a guess that the testatrix would want the adoptee to take a share of her estate but her will cannot be construed by surmise.
Any argument that, because there had been an adoption within the family of the testatrix in her lifetime, her will’s silence as to other adoptees is indicative of an intention to benefit persons adopted in her family after her death can be assailed by the more cogent contention that, aware of one adoption, her failure to provide a status for a later adoptee, indicates either no particular concern about such other adoptee or an intention to let the normal rules of law take their course. A proper motive might impel a court to read into a will a solution for a contingency not actually contemplated by a testatrix but the same impulse cannot be said to operate when a testatrix, cognizant of an existing situation, omits to provide for an equivalent situation arising after her death. In the Viele case (161 N. Y. 11, 20-21, supra) the court said: “ The testatrix, when she made the will and codicil, knew of Olga’s adoption and of her relations to the family of Emily, the other daughter, and her husband. It is quite difficult, in view of these facts, to believe that, if the testatrix intended to make a gift to a child by adoption of a remainder in one-third of the estate, that she *320 would omit to mention her name in any part of the will, whereas she did name all her grandchildren by blood. If Olga was intended to be included in the words 1 lawful issue, ’ she would take, after the death of Emily, one-third of the residuary estate in fee, whereas each of the ten grandchildren by blood would take a life estate only in about one-fifteenth. In the distribution of her property by the testatrix, such a marked discrimination in favor of an adopted child of her daughter and son-in-law, who was in no way related to her by blood, and against her own descendants, would seem to call for some explanation, and none appears either upon the face of the will or in the surrounding circumstances.” The Upjohn case, in taking a different view, relied primarily upon the fact that the testator actually knew the adoptee in his lifetime and, secondarily, upon the concept introduced by Matter of Horn (256 N. Y. 294, 297), that the Legislature was particularly concerned about the perpetration of a fraud upon a decedent. Here the adoption by the grandchild occurred long after the testatrix’ death, a fact which, in part, distinguishes the Upjohn decision, and the Rockefeller opinion has rejected the idea expressed in Upjohn as to legislative purpose.
Once the concept of fraud upon a testator is eliminated in determining the status of an adopted child under a will, any reason for the admission of evidence of a testator’s general mental attitude towards adopted children as a class also is eliminated. This will read alone does not provide the adopted child a status. Those extraneous facts which properly may be considered do not provide a sound basis for granting such a status. The recognition of the adopted child will defeat the remainder gifts in the will (Domestic Relations Law, § 117; Matter of Ricks, 10 N Y 2d 231, supra; Matter of Taintor, 32 Misc 2d 160, affd. 16 A D 2d 768). Accordingly it is held that the adopted child does not have a remainder interest in the trust.