Christopher C. McGrath, S.
Harry Klein, the above-named decedent, died May 6, 1962. Letters of temporary administration under his will Avere issued by this court on July 11, 1962 to Samuel Sprung and Harry Adler. His will dated February 8, 1960 and the codicil thereto dated January 9, 1961 were duly admitted to probate and letters testamentary were issued to said Samuel Sprung and Harry Adler on December 20, 1962.
An account has been filed by the aforesaid temporary administrators and executors for the period commencing May 6, 1962, the date of decedent’s death, to February 28, 1963. The gross value of the estate as set forth in the petition and account is in excess of $5,400,000. The petitioners pray that (1) their account be judicially settled, (2) that they be discharged as temporary administrators, (3) that they and the surety on *471 their bond as temporary administrators be discharged and their bond cancelled, (4) that the court construe the paragraph marked “fifth” of the will of the decedent with respect to the interests of the adopted children of Ernest Milchman and Claire Milchman, and (5) that the court grant such other and further relief as the court may deem proper.
The main problem in this accounting proceeding pertains to the construction of paragraph “ fifth ” of the will with respect to the interests of the adopted children of Ernest Milchman and Claire Milchman. In said parrwranh “fifth” testator directed that a residuary trust be created of which, until its termination, the trustees are directed to pay the income in part as follows: “Fifteen (15%) percent thereof to my beloved great grandchildren, that is to say, the grandchildren of my daughter, Frances Rachels on, equally share and share alike.” Said paragraph “ fifth ” contains a like provision in identical language for disposition of the principal upon termination of the trust.
At the time of the testator’s death on May 6, 1962, he had four great-grandchildren; two were the children of his granddaughter, Sandra Weiner, and two were children of his granddaughter, Claire Milchman, but one of these children of Claire Milchman and her husband, Ernest Milchman is Gary Milchman who was adopted by them in April, 1959. However, in April, 1963, after the testator’s death, Claire Milchman and her husband adopted Mindy Valerie Milchman.
This court has been requested to determine ivhether both Gary and Mindy are, or either of them is, to be included within the class of decedent’s great-grandchildren.
It appears that when the testator drew his will he had full knowledge of the adoption of Gary which had taken place 10 months earlier, that testator had attended Gary’s circumcision ceremony and at that time had held the child in his arms, that decedent had shown the same love and affection to Gary that he had exhibited to the other great-grandchildren and that the testator had fully accepted and acknowledged the relationship which the adopting granddaughter had created with her husband. These facts and conclusions pertaining to Gary have been conceded to be true by all interested parties and are uncontroverted.
Since the decedent had full knowledge of Gary Milchman’s adoption months before the execution of the will, and from all his actions considered and recognized this adopted child as one of his great-grandchildren, the court holds that Gary Milchman is included in the class of testator’s great-grandchildren entitled *472 to participate as a beneficiary of the testamentary trust created by paragraph “ fifth ” of the will herein (Matter of Upjohn, 304 N. Y. 366; Matter of Charles, 200 Misc. 452, affd. 279 App. Div. 741, affd. 304 N. Y. 776; Matter of Day, 10 A D 2d 220; Matter of Ricks, 12 A D 2d 395, affd. 10 N Y 2d 231; Matter of Horn, 256 N. Y. 294).
However, as to the right of the infant, Mindy Milchman, to participate as a beneficiary, there is no justification for such a construction. This child was adopted after the death of the testator and the will is completely silent as to the inclusion of postadopted children. Although the court sympathizes with Mindy’s plight and is fully aware of the present trend, in the State of New York towards placing foster children on an equal basis with natural born children, this court can see no valid reason for reducing and diluting the shares in this estate of decedent’s lawful legatees by permitting a postadopted child to share as an heir herein.
The special guardian appointed by this court to protect Mindy’s rights and interest in this estate, if any, relies mainly on Matter of Day (10 A D 2d 220) and Matter of Andrus (44 Misc 2d 220) as supporting his position that his after-adopted ward is entitled to share as a great-grandchild of the testator. A reading of these cases discloses that the background of the decedents involved therein tended to establish not only that they favored adoptions generally but that they had in their lifetimes exhibited a widespread interest in orphans or destitute children and had a deep and abiding interest in their welfare. Although the testator herein was generous to religious institutions, he confined his bounty disposable by will to his immediate family.
In Matter of Johnson (40 Misc 2d 539) Surrogate Cox in refusing to follow Matter of Day (supra) said (p. 540): ‘‘ Although the petitioner’s adopted child was not born until many years after the testatrix’ death, support for the contention that the .testatrix’ contacts with other adoped children could be indicative of her testamentary purpose appears in Matter of Ward (9 A D 2d 950, affd. 9 N Y 2d 722) and Matter of Day (10 A D 2d 220). This court had occasion in Matter of Pryor (38 Misc 2d 722) to examine the cited opinions as well as other relevant decisions and the conclusion was reached that in Matter of Rockefeller (Hubbard) (12 N Y 2d 124) the Court of Appeals had rejected the reasoning of the cited cases and, in fact, had reinstated the rationale of the- older decisions (New York Life Ins. & Trust Co. v. Viele, 161 N. Y. 11; Matter of Leask, 197 *473 N. Y. 193). In Matter of Upjohn (304 N. Y. 366) the thinking was that, because the testator knew of a particular adoption, he intended to benefit such child. In the Ward and Day decisions this testamentary purpose was extended .to encompass adoptees unknown to the creator of the trust when the facts established that the creator’s attitude toward adoptees was generally favorable.”
In Matter of Hilts (5 Misc 2d 862) Surrogate Di Falco rendered an opinion in which he held that if the adoption took place after the testator’s death, the adoptee should not share, unless the will or the surrounding circumstances indicated a clear intention to include adopted children.
In Matter of Ricks (12 A D 2d 395, affd. 10 N Y 2d 231, supra) Judge Valexte said at page 397:
*1 In the instant case, we do not have any of the extraneous circumstances found in Matter of Upjohn (supra); Matter of Day (supra) and Matter of Ward (supra). In the absence of such a background of facts and circumstances, Special Term should have construed the trust instrument to exclude as ‘ descendants ’ the children adopted by James B. Ricks after the execution of the trust deed. (See Matter of Leask, 197 N. Y. 193.)
“ It has been consistently held that in similar circumstances, where a child has been adopted after the death of the testator, that the adopted child does not fall within the class of persons designated as 1 issue ’ or ‘ descendants ’ in the will. (Matter of Peabody, 17 Misc 2d 656; Matter of Cook, 8 Misc 2d 102; Matter of Hilts, 5 Misc 2d 862, affd. 4 A D 2d 1013; Matter of Holt, 206 Misc. 789.)”
In a further effort to include Mindy as one having an interest in this estate, her special guardian refers to the 1963 amendment to section 117 of the Domestic Relations Law, effective 1964, and argues that the attorneys involved in the present case would hold the dry date of enactment of this new statute against the infant, Mindy, rather than the general charitable intent and spirit of the law. Aside from the inapplicability to the case at bar of this subsequently enacted statute, the language of Surrogate Cox in Matter of Johnson (41 Misc 2d 314, 318-319) is particularly pertinent:
“ Concededly the public attitude towards adopted children has changed over the years and today such children have an improved status not only as to their social position but, by both legislation and judicial decision, in connection with their rights to inherit property. This court, having jurisdiction of adoption *474 proceedings and competent to bear witness to the success of thousands of adoptions, is of the opinion that every effort should be made to grant full recognition to adopted children. Legislation enacted in 1963 is directed to this objective and will serve to eliminate problems of the kind presented in this estate. Hoioever, the personal feelings of the court do not permit it either to abandon established rules of law in construing this will or to ignore legislation controlling the construction of this will. & * *
“ Any argument that, because there had been an adoption within the family of the testatrix in her lifetime, her will’s silence as to other adoptees is indicative of an intention to benefit persons adopted in her family after her death can be assailed by the more cogent contention that, aware of one adoption, her failure to provide a status for a later adoptee, indicates either no particular concern about such other adoptee or an intention to let the normal rules of law take their course. A proper motive might impel a court to read into a will a solution for a contingency not actually contemplated by a testatrix but the same impulse cannot bo said to operate when a testatrix, cognizant of an existing situation, omits to provide for an equivalent situation arising after her death.” (Italics supplied.)
One last argument advanced by the special guardian for Mindy requires comment. With commendable zeal for the rights of his ward, the special guardian has called the court’s attention to the recent decision of the Court of Appeals in Matter of Park (15 N Y 2d 413). An examination of this decision leads this court to the opinion that Matter of Park cannot be held as authority for the special guardian’s position that Mindy must be included as a member of the class of great-grandchildren entitled to participate as a beneficiary herein. The court therefore holds that the postadopted child is not entitled to share in this estate and paragraph ‘‘ fifth ’’ of decedent’s will is construed accordingly.
The claim of Alfange and Friedman, Esqs., for professional services which all interested parties agreed was to be decided by the Surrogate upon the affidavit of services submitted by the claimant is allowed in the sum of $5,500, which shall be inclusive of their disbursements. The personal claim of Samuel Sprung, Esq., for legal services rendered to the decedent prior to his death is allowed in the amount requested.