John D. Bennett. S.
Besides praying for the settlement of bis account as executor and trustee, the petitioner originally requested the court to appoint Palmer First National Bank and Trust Company of Sarasota as cotrustee with him and for permission to transfer the assets of the trusts from the State of New York to the State of Florida where the bank and. the petitioner are both domiciled.
By decision of August 20, 1974 the court treated the application as one to remove the situs of the trust to the jurisdiction *741 of a Florida court of competent jurisdiction on condition that petitioners satisfy certain requirements mentioned therein. It was then pointed out that a guardian ad litem had to be appointed to represent the interest of any infant beneficiaries. It now appears that petitioners have substantially complied with the court’s suggestions and filed a copy of an order of a Circuit Court for Charlotte County, Florida, dated November 4, 1974, assuming jurisdiction of the trust estate(s) "effective upon the filing * * * [therein] * * * of a duly authenticated copy of an order [of this court] renouncing jurisdiction thereof’ etc. and the Florida court further adjudged that the petitioners herein were therefore "appointed co-trustees of the trust(s) under the will of’ this decedent.
It appears that all of the adult persons interested in the enforcement of the trusts created by the will of this decedent have consented to the removal of the trust assets to the State of Florida. The guardian ad litem, however, opposes the same although recognizing in his memorandum that under the cases hereinafter set forth this court does have the jurisdiction and full discretion either to grant or deny the application.
The estate originally consisted of real property, cash and securities totaling over $600,000 and the principal now on hand is about $400,000. The decedent’s real property was devised to son John outright and therefore it does not form part of the corpus of the trusts herein affected. The will was executed on January 5, 1969 and a codicil on December 19, 1970. The decedent was domiciled in New York, the will was probated here and the will must be construed or interpreted in accordance with the laws of the State of New York (Dupuy v Wurtz, 53 NY 556; New York Life Ins. & Trust Co. v Viele, 161 NY 11; Fell v McCready, 236 App Div 390). There is no express direction in the will that only the laws of New York should govern the administration of the trusts hereinafter described and such administration should therefore be governed by the situs of the trust, which at this time is New York (Matter of Freed, 71 NYS2d 304, 306, citing Matter of Vanneck, 158 Misc 704 and Beale, Conflict of Laws, p 1024); but upon removal would, presumably, be Florida.
The will divides the residuary estate into two parts designated A and B, both to be held in trust. Son John is to receive all of the income for life of fund A and on his death one half of income to his wife Mary for her life with the other half of the income to be distributed as in fund B. On Mary’s death *742 the principal and accrued income of half of fund A is transferred to fund B and on the son’s death the half of principal and accrued income likewise goes to fund B. Fund B itself is divided into two parts for the benefit of decedent’s two grandchildren (both being the children of son John). The grandson is to receive the income and the principal of his half in installments until age 45 at which time that portion of the trust terminates and he is to receive the principal. The granddaughter is to receive the income of her portion for life and on her death that part of principal goes to her children, if any, in equal shares, and if there are none the principal is poured into the grandson’s trust if he is living and if not, then to his children. There is a provision for distribution of principal per stirpes to the decedent’s descendants on death before 45 of "any child or descendant.” The location of this phrase in the will probably refers to the death of the grandson before 45 and the latter’s descendants but it may be necessary, depending upon future events, to have a construction of this phrase.
Article sixth of the will nominated the decedent’s son John and a specified New York trust company as both executors and trustees. The trust company apparently did not wish to serve either as executor or as trustee so it filed a renunciation of both offices and on the probate the court appointed the son John as sole executor. Since John is a trust beneficiary, it is now necessary that there be appointed a cotrustee to act with him. It develops, however, that the corporate New York fiduciary still does not wish to serve as a trustee. The petition shows that John and all of the beneficiaries except the decedent’s granddaughter (who is John’s daughter) and her family now reside in the State of Florida. John’s daughter, the income beneficiary of one quarter of the trust estates, is still in New York but, as mentioned above, has signified her formal consent to this transfer. It is therefore only one contingent remainderman, an infant great-granddaughter of decedent, represented by the guardian ad litem, who opposes the transfer.
The reasons for this application are: (1) that the corporate New York fiduciary nominated in the will refuses to accept the trusts since the will provides for "statutory” fees which are not acceptable to it; and (2) John, who is named in the will as a cotrustee, has permanently moved with his family who are beneficiaries to the State of Florida; that because of his lack of accessibility to any New York bank as cofiduciary, the *743 administration of the trusts would be made difficult and expensive if the court directs that only a New York bank or trust company may serve. It is urged that use of the mails and telephones is simply not adequate because the individual trustee desires to be an active participant in the handling of the trusts. On this point the guardian ad litem appears to disagree. He urges that since the petitioner’s daughter and her infant child (his ward) live on Long Island and the petitioner will doubtless have occasion to visit her and her family and may have other opportunities to come to New York. He states that this should give the individual cotrustee ample opportunity to meet and consult with the trust officers of a New York bank especially since (in his opinion) an investment account of the type involved here does not require instant decisions with frequent and immediate consultation with the bank’s trust officers; that consultations can “easily” be had in person by the individual trustee residing in Florida with a corporate cotrustee in New York by telephone and often by correspondence.
The guardian ad litem also urges that Florida banks after July 1, 1975 will be governed by the Uniform Trust Administration Law which will allow "reasonable compensation” for the services of the trustees, plus all necessary expenses including attorneys’ fees. The point made here is that article sixth of the will of this decedent expresses a wish that the New York statutory rates for fiduciary commissions should apply. On this latter argument the court notes that article sixth directs the fiduciaries to be paid "such compensation for their services hereunder as is reasonable in the circumstances but in no event should such compensation exceed the statutory compensation for the administration of my estate and the trusts created hereunder.” In this language the court finds no direction that the fiduciary be limited only to New York statutory rates.
It is further noted that the testatrix did not require that the son’s cotrustee must be a New York bank or trust company but merely stated in article sixth that if the specified bank should fail to qualify and her son John should survive, another bank or trust company should be appointed cotrustee. She also directed that no bond or other security should be required in any jurisdiction for the faithful performance of trust duties. The court construes the language in the will as an implied intent of the testatrix that any bank in any *744 jurisdiction would be satisfactory to her. That intention is further buttressed by directions in the will contained in subdivisions (18) and (19) of article eighth which authorize the executors and the trustees to incorporate "under any state law all or any part of my estate or trust created hereunder” other language granting to the trustees a right to "designate a successor Trustee by will or by written appointment in the case of resignation.” (Emphasis supplied.) The trust company in this State has refused to qualify and the application here having been signed by the sole executor and remaining trustee, it may also be considered by the court as a written appointment of the Florida bank within the language of the will.
This court has the power and authority to remove the situs of the trust under this will by virtue of its general equity powers under SCPA 201 and 203, and this decision is thereby authorized as a "full, equitable and compítete disposition-of the matter * * * as justice requires.” • v , ' x
In Matter of Smart (15 Misc 2d 906) -the Supreme Cdfirt of New York County directed the transfer 'of Assets-arta^thte1 situs of an inter vivos trust to success: r trú&feteF0^ tHe/ S!$‘te of Maryland, citing Matter of Matthiessen (195 Misc 598). ’The court found in those cases that jurisdictioiihvaiinot exclusively bestowed by the trust instruments upon the! StaiiS of New York. Both cases disposed of the "publife policy concerned which could prove disabling” (Matter of Smart, supra, p 910) on the reasoning that section 131 of the Banking Law which prohibits a bank or trust company of another State from being a fiduciary within this State "did not prohibit the transfer of the trust situs.” The successor trustee obviously would not act as trustee in this State and under such circumstances the Banking Law is not contravened. (See, also, a discussion of these and other cases in 5 Scott, Trusts [3d ed], § 614.)
In Matter of Weinberger (21 AD2d 780, 781) the Appellate Division reversed a Surrogate’s exercise of discretion on the law and on the facts where there was "nothing in the will which either sanctions or bars the proposed transfer of the trust.” In the exercise of discretion the Appellate Division in that case unanimously granted the application of individual trustees for leave to apply to a California court for issuance of letters of trusteeship to themselves and to a corporate fiduciary appointed by the California court. That case was on all fours with this one since there the trustees named were the *745 decedent’s son, her husband and a New York trust company; both of the individuals had moved to California and become domiciled there; the corpus of that trust consisted only of corporate securities; and the administration of the trust had become difficult due to the distance between the place of business of the corporate trustee and the residence of the individual trustees. The application in the Weinberger case was made on precisely the same grounds and similar facts as set forth in the papers now before this court and the discretion of this court follows that mandated in Weinberger. The Appellate Division in Weinberger further stated (p 781): "In the absence of a contrary intent shown to have been held by the creator of a trust, there is nothing in our public policy which prevents such a transfer (Matter of Matthiessen, 195 Misc 598). Here where there is every indication that the administration of the trust will be facilitated by the transfer and no reason to believe, that the donor intended to forbid a transfer under the circumstances, the application should be allowed.’' As shown, by, tigp Appellate Division in Weinberger and noted hereinabove,, the trustees in this case, appointed by the ep'm m Pk-ridE. will longer be acting as trustees in New Yorl and /-Oists ;ute or public policy is offended.
It is further notec that a Supplementary Practice Commentary by Paul Powers», Jr. in 1970 appended to SCPA 1501 (McKdnney’e Cons Laws of NY, Book 58A, 1974-1975 Pocket Part, SCPA 1501, p 73) observes that the courts acting under that section have been liberal in accepting jurisdiction of assets transferred to this State from other States and that many times all that is required by the New York courts is the assurance of the court of original probate that the assets can so be transferred here. (The converse should also be true.) He further states: "Florida, one of the States which will not allow a New York resident to qualify [there] as trustee, for example, has allowed assets to be transferred to New York for administration under the laws of the State of New York.” This court has had the same experience with respect to Florida and it has confidence that the court in Florida will give due consideration to the administration of the trusts in this case.
The guardian ad litem, as authority for rejecting this re: moval, cites the case of Matter of Hudson (29 AD 145, affd 23 NY2d 834). The Appellate Division decision, affirmed in that case, distinguished it from Matter of Matthiessen and Matter of Weinberger discussed above. Moreover, the agreement in *746 volved in that case specifically provided that all questions pertaining to its validity, construction or administration were to be determined in accordance with the laws of New York. That specific provision alone would make the Hudson case inapplicable here.
The objections of the guardian ad litem are overruled and the trusts and trust assets should be transferred to the above-mentioned court in the State of Florida. That court undoubtedly will take into consideration the principles of statutory and case law in this jurisdiction which are clearly designed to preserve and protect the integrity of this will and the intent of this testator. Without dwelling at this time on any differences between the laws of our two States or a later possible conflict between such laws, it is noted that any questions that may arise in the future are academic. We call attention, however, to one treatise which covers the laws of all the States (6 Bowe-Parker: Page on Wills, §60.17, pp 476-477) where it is stated:
"If a bequest of personalty is made in trust, its validity is primarily to be determined by the law of the domicile of testator, and not the law of the place where the property is situated [citing many cases from New York and other jurisdictions, but none from Florida]. Whether the interest of the beneficiary under a trust of personalty is assignable or not depends upon the law of the domicile of the testator * * *
"The theory that a trust of personalty is to be controlled by the law of testator’s domicile has been said to depend upon the theory that such trust is to be administered at testator’s domicile unless a contrary intention is indicated in the will. If the language of the will when read in the light of the surrounding circumstances shows that the trust is to be administered in a state other than that of testator’s domicile, the validity, effect, etc., of the trust is to be determined by the law of the place in which the property is to be administered, even though the trust would not be valid if the property were to be held in trust at testator’s domicile, at least, if the objection to the trust is not regarded by the law of testator’s domicile as involving a serious matter of public policy. Where a testator directs that certain funds be sent to another jurisdiction, and there delivered to a corporation not yet created, the validity of such gift is determined by the law of the jurisdiction to which such funds are to be sent. (Citing Dammert v Osborn, 140 NY 30, rearg 141 NY 564.)” (Emphasis supplied.)
*747 The Dammert opinion of the highest court in our State was rendered in 1894 and should be considered as some authority to the effect that when courts of one jurisdiction cannot give effect to a certain testamentary disposition without violating its laws or public policy, the property should be remitted to the jurisdiction of the domicile. That case has been frequently cited in New York and in the Federal courts for its impact on questions of public policy, constitutional law and conflicts of law.
The court is naturally concerned that the intentions of this testatrix, as expressed in her will, will be carried out. It is accordingly directed that the decree in providing for the transfer of the trusts should contain appropriate language to recite this decision and affirmatively state that the transfer is with the knowledge that the Florida court(s) will give due regard to the laws, judgments and decrees of the State of New York as respects the interpretation of the will and the policies of this State.
There remain other minor questions to be passed upon in this decision: the listing in schedule E of certain principal payments is not in accordance with the will. The contents of the safe deposit box should have been distributed to the decedent’s grandchildren living at her death in equal shares pursuant to paragraph third as changed by the codicil. The said grandchildren have, however, executed waivers and consents and have not objected.
The payments to the decedent’s grandson John and granddaughter Elizabeth of $5,963.06 and $2,191.02, respectively, were not authorized by the will. Such payments would reflect an improper reduction of principal and the account should be amended to reflect the same as payments from the income of the trusts for their benefit and reimbursed to principal. In this connection the court observes that the last paragraph of article fifth of the will authorizes use of principal for a minor’s support, comfort, education, etc. but that is authorized only if the principal is payable to a minor as, for instance, upon termination of the trust.
The payments to Alma Foley made from principal of about $2,000 are explained by the affidavit of John D. Benedito dated June 2, 1975. This indicates that said payments were considered to be a legal obligation, in keeping with the decedent’s wishes that such payments continue until Miss Foley’s death in June, 1973. Such payments are therefore considered *748 to have been the allowance of a claim and proper under the circumstances, especially as none of the adult beneficiaries have objected thereto.
The other mathematical errors mentioned in the letter of the guardian ad litem dated June 19, 1975 should be corrected if in order.